## GENESEE COUNTY SAVINGS BANK v. KINDT.

NEGOTIABLE INSTRUMENTS — HOLDER FOR VALUE — INSTRUCTIONS.

1. Where plaintiff sued upon two notes which had been indorsed and delivered to it by the original payee, and a special defense was set up that one of the notes was given in part payment for a horse which such original payee had agreed to sell and deliver to the defendant, the remainder of the purchase price being paid in sheep delivered to said payee, and the latter failed to deliver the horse, thereby rendering that note without consideration ; there being no infirmity in the other note, and none alleged or claimed, held, that defendant was not entitled as against the plaintiff to set off against the latter note the value of the sheep delivered to the payee and plaintiff's indorser as part payment for the horse.

2. If a promissory note has been transferred before due, in the usual course of trade for value, to a person who had no notice of any defects arising out of the dealings of the prior parties,

21

such *bona fide* holder takes the paper discharged from such infirmities.

3.   Where the transfer of negotiable paper has for its consideration a loan or advancement, made at the time, for which the paper is to be held as collateral, or if it is deposited as additional security to obtain an extension of the time of payment of a precedent debt — in such cases the transfer will be deemed a transfer for value and in the usual course of business, and the assignee will be protected from infirmities affecting the instrument before it was so transferred.

4.   The evidence for the plaintiff supporting the material allegations of the petition, and there being no competent evidence controverting it; a peremptory instruction requested by plaintiff to find for the plaintiff for the full amount of the notes in suit and interest, should have been given.

[Decided January 26, 1898.   Commenced in district court July 11, 1895.]

Error to District Court for Carbon County, Hon. Jesse Knight, Judge.

The Genesee County Savings Bank of Flint, Mich., filed its petition in the district court of Carbon County against Fred Kindt, for the sum of nine hundred thirty-one and ninety-five hundredths dollars and interest and costs, alleging, in substance as follows:

That the plaintiff was a corporation organized and existing under the laws of the State of Michigan; that on September 14, 1892, defendant Kindt executed and delivered at Rawlins, Wyo., to one S. B. McIntyre, his certain promissory note for three hundred dollars, due June 1, 1893, with interest at the rate of 10 per cent per annum from date until paid, together with costs, expenses, and attorney's fees, a copy of said note being attached to said petition; that thereafter and prior to maturity, for a valuable consideration, said S. B. McIntyre by indorsement in writing, duly transferred said note to plaintiff, and plaintiff is now the owner and holder thereof; that nothing has been paid on said note, and fifty dollars is a reasonable attorney's fee.   And for a second cause of action, alleging incorporation of plaintiff as above, the

making and delivery by defendant, Kindt, to S. B. Mc-
Intyre of his promissory note in writing for four hundred
dollars, on November 17, 1892, due eighteen months
after date, with use at ten per cent per annum, a copy of
said note with indorsements thereon being attached to
said petition; that thereafter and prior to the maturity
thereof, for a valuable consideration, said S. B. Mc Intyre,
by indorsement in writing, duly transferred said note to
plaintiff and that plaintiff is now the owner and holder
thereof; that nothing has been paid on said note.    The
defendant filed his answer to said petition, wherein he
denied the existence of such a corporation as the plaintiff;
denied that prior to the maturity of said notes, the said
S. B. Mc Intyre by indorsement in writing, transferred
the notes to plaintiff, denied a transfer of said notes for
a valuable consideration by Mc Intyre to plaintiff, and
denied that plaintiff ever became the owner and holder of
said notes.    And alleged as an affirmative defense, that
the consideration for the four-hundred note was the sale by
said S. B. Mc Intyre to said defendant, Kindt, of one
certain horse, upon the agreement at the time of the
execution of the said note, that the said S. B. Mc Intyre
would deliver said horse at defendant's ranch in Carbon
County, Wyoming, in good condition, and that said Mc-
Intyre had failed to deliver said horse, as agreed or at all;
and that said note was given without any consideration
whatever; that the purchase price of said horse was six
hundred and fifty dollars, and that defendant at the time
he purchased said horse, sold and delivered to said S. B.
Mc Intyre twenty-five buck sheep for the sum of two hun-
dred and fifty dollars, which sum was part of the purchase
price of said horse, and by reason of the failure of the said
S. B. Mc Intyre to deliver said horse, defendant claims
an offset and counter-claim for two hundred and fifty dol-
lars and 10 per cent interest, against the said three-hun-
dred-dollar note.    Plaintiff filed its reply to said answer,
denying every allegation set out in the affirmative defense.
    A trial was had before the court and a jury, and a ver-

dict was returned in favor of the plaintiff for $118.44. Plaintiff moved for new trial, which was overruled, and a judgment was entered upon the verdict. The plaintiff prosecuted error.

*P. E. Keeler*, for plaintiff in error.

There being no conflict in the evidence upon any material issue, it was the duty of the court to declare as a matter of law the legal rights of the parties; hence the peremptory instruction requested by plaintiff was proper and its refusal, error. (Mc Cormick v. Holmes, 41 Kan., 265.) An indorsee of negotiable paper, before maturity, in good faith, holding the same as collateral security for a loan made at the time of the transfer, is entitled to protection to the extent of the debt secured. (Dan'l on Neg. Inst., Sec. 824; Roxborough v. Messick, 6 O. St., 448; Bank v. Chapin, 8 Metc., 40; Bank v. Vander-horst, 32 N. Y., 553; Sav. Asso'n. v. Hunt, 17 Kan., 532; Best v. Crall, 23 id., 382; Lyon v. Ewing, 17 Wis., 63; Peters v. Gray, 37 Pac., 325; Laws 1888, Ch. 70, Secs. 33, 34.) An allegation of ownership of commercial paper, aside from the allegations of indorsement set out in a petition showing transfer, is a conclusion of law, and its denial raises no issue requiring proof on plaintiff's part. (13 Pac., 232; 32 Cal., 569; 1 Duer, 265; 3 Wyo., 321.)

The rule in cases where the consideration of a negotiable instrument is impeached by answer, differs from cases where fraud is relied upon as a defense. In such cases it is sufficient for the defendant to allege and prove the circumstances constituting the fraud, and thereupon the plaintiff is required to show a holding by indorsement for value before maturity; on the contrary, however, when want or failure of consideration is the defense, the defendant must allege and prove knowledge or notice on the part of the plaintiff, as to the facts constituting the defense, before the plaintiff is required to introduce any other evidence than the notes themselves, the introduction

of which makes a *prima facie* case.   (Herman v. Gunter, 83 Tex., 66; Organ Co. v. Boyle, 10 Neb., 409; Bank v. Crow, et al., 60 N. Y., 85; Hardie v. Wright, et al., 83 Tex., 345; Violet v. Rose (Neb.), 58 N. W., 216; Bank v. Ruhl (Ind. App.), 23 N. E., 766; Galvin v. Bank (Ind. App.), 28 N. E., 847; Rand v. Pantagraph, 1 Col. App., 270; Voorhees v. ¦Fischer (Utah), 34 Pac., 64.

*D. H. Craig*, and *F. Chatterton*, for defendant in error.

Our position is that these notes were taken by the plaintiff in error, as agent, for collection, and were to be credited to Mc Intyre, if paid, not otherwise.   But that Mc Intyre, knowing that he could not, by reason of his own misconduct, collect the amount of the notes, in a suit in his own name, is trying to use the plaintiff in error, who from the evidence of its long and close business relations with Mc Intyre, shows a remarkable willingness to assist him in the scheme.

The evidence shows that the plaintiff in error did not make any inquiry as to how Mc Intyre came by the notes, and it is a well-settled principle of law, that a person who takes a note under circumstances calculated to excite suspicion, and having the means of knowledge, must be considered a holder with notice of fraud, if any exists. (Jones v. Gordon, 37 L. T., N. S., 477; 2 L. R. App. Cas., 616; Fisher's Digest, Vol. 1, page 1203.)   And again, when paper is taken under circumstances of suspicion, as in this case, so palpable as to put those dealing for it before maturity, on their guard, if they fail in the necessary diligence, they must abide by the misfortune their negligence has caused, and stand in the place of the drawee.   (Fowler v. Brantly, 14 Pet., 318.)

We hold that the evidence in no way shows that the plaintiff in error at any time purchased the notes. When a party receives a note as collateral security for an existing debt, without any special agreement (and there

is none in this case), he receives it as agent, and the general law of agency determines the rights of the parties. (Roberts v. Thompson & Clark, 14 O. St., 7; Lawrence v. McCalmont, 2 How., 426, 453.) So we are of the opinion in this case that the law of agency governing, the agent, plaintiff in error, is subject to the same defense in the suit, as is its principal, McIntyre.

CORN, JUSTICE.

This was a suit on two promissory notes for $300 and $400, respectively and interest, executed and delivered by defendant to one S. B. McIntyre, and by him indorsed and delivered before maturity to the plaintiff in error. The defendant filed a general denial, and also pleaded that the note for $400 was in part payment for a horse sold by McIntyre to him for $650, that McIntyre failed to deliver the horse as agreed, and that the consideration of the note had entirely failed. That the remainder of the purchase price of the horse, $250, was paid in sheep, delivered by defendant to McIntyre. The evidence showed that in October, 1892, the plaintiff took the $300 note together with others as collateral security for a loan of $1,200, made at the time to McIntyre, and that McIntyre's indebtedness to the bank, at that date, with the $1,200 added, was $9,700. That on January 3, 1893, this indebtedness having been reduced to $8,700, all of which was due, McIntyre deposited the $400 note with others as collateral in consideration of an additional loan of $200, and an extension of the time of payment of the entire indebtedness. That a portion of this indebtedness, largely in excess of the amount of these two notes, was still unpaid. That the bank or its officers had no notice of any defense to the notes or any infirmity in either of them and took them in the ordinary course of business. Upon the trial it was stipulated by counsel for the parties that the defendant if present would testify to the facts set out in the special defense as above detailed, the plaintiff reserving the right to object to the admission of the

testimony as incompetent, irrelevant, or immaterial.    No other evidence was offered by the defendant than that contained in the stipulation.    It was admitted by the court over ˙the objection of the plaintiff.    The plaintiff requested the court to charge the jury that " plaintiff is entitled to recover upon the notes in suit the full amount of principal and interest of each of them, computed from the date of each, at the rate of interest provided for in each."    The court refused to give the instruction and upon a further stipulation that a reasonable attorney's fee provided for in the $300 note was $50, the cause was submitted to the jury.    They gave the defendant credit for the amount of the purchase price of the horse and returned a verdict for the plaintiff for $118.44.

There being no infirmity in the $300 note, and none alleged or claimed, it is manifest that the action of the jury in setting off against it the value of the sheep delivered as part consideration for the purchase price of the horse, was erroneous, and upon this ground alone the judgment should be reversed.    But the principal question presented by the record is whether the court should have excluded the evidence objected to and instructed the jury to find for the plaintiff the amount of its notes and interest.

The rule of law is well settled that if a promissory note has been transferred before due, in the usual course of trade for value, to a person who had no notice of any defects arising out of the dealings of the prior parties, commercial policy requires that such *bona fide* holder shall hold the paper discharged from such infirmities.    And the rule is incorporated into the chapter of the statutes of this State entitled " negotiable instruments."    Laws 1888, Chap. 70, Secs. 33, 34.

At the same time nice questions arise as to what constitutes a transfer for value.    In many of the States it is held where the paper is transferred as collateral merely for a pre-existing debt and not as a consideration for forbearance, or the parting with any right by the creditor,

the transfer is not for value.  A larger number perhaps of the States, the English courts, and the courts of the United States hold a contrary doctrine.  But the authorities are substantially agreed that where the transfer has for its consideration a loan or advancement, made at the time, for which the paper is to be held as collateral, or if it is deposited as additional security to obtain an extension of the time of payment of a precedent debt, in such cases it is deemed a transfer for value and in the usual course of business, and the assignee will be protected from infirmities affecting the instrument before it was thus transferred.  Roxborough v. Messick, 6 O. S., 451; Chicopee Bank v. Chapin, 8 Met., 40; Frey v. Clifford, 44 Cal., 339; Meadow v. Bird, 22 Ga., 248; Bank v. Cheeney, 87 Ill., 604; Straugham v. Fairchild, 80 Ind., 598; R. R. Co. v. Nat. Bank, 102 U. S., 14.  The cases are collated in a very able dissenting opinion by Justice Conaway in Bank v. Luman, 6 Wyo., 123.

But the defendant contends that the notes were taken by plaintiff under circumstances calculated to excite suspicion and sufficient to put it upon inquiry as to any fraud in the procurement of the notes.  The only evidence upon the subject is that introduced by the plaintiff from which it appears that the plaintiff is a banking corporation in Michigan.  That it had had considerable dealings with McIntyre, in the course of which it had lent him sums of money aggregating some ten thousand dollars.  That its officers knew in a general way that he was handling horses and sheep in the West, and it took these notes as collateral for loans made to him, and for an extension of time and a renewal of his notes to the bank.  So far as appears from this evidence, and it is all there is on the subject, there were no circumstances other than the borrowing of money, and an extension of the time of payment, upon notes as collateral security.  Whether the bank acted prudently in making the loan under the circumstances, the court is not informed and can not judge, and whether it did or not, in no way affects the question of notice or good faith upon the part of the plaintiff.

It is also urged that plaintiff is to be deemed simply the agent of Mc Intyre for the collection of the notes and as merely standing in his shoes. But it is sufficient to say that there is no evidence in the case whatever tending to such a conclusion. All the evidence tends to show that the plaintiff took the first note as collateral security for money loaned at the time, and the second partly for money loaned at the time and partly as security for an existing indebtedness and an extension of the time of payment. That they were taken in the usual course of business and without notice of any defect.

The evidence in support of the special defense was inadmissible and should have been excluded. And as the evidence for the plaintiff supported the material allegations of the petition, and there was no competent evidence controverting it, the peremptory instruction directing the jury to find for the plaintiff should have been given as requested.

For the errors indicated the judgment will be reversed and a new trial awarded.

*Reversed.*

POTTER, C. J., concurs.

KNIGHT, J., did not sit in this case, it having been submitted during the lifetime of the late Chief Justice Conaway.