**STATE** ex rel. **FREELING**, Atty. Gen., v. **SMITH** et al.

No. 12539—Opinion Filed Dec. 18, 1923.

Rehearing Denied Jan. 27, 1925.

Second Rehearing Denied March 3, 1925.

(Syllabus.)

**Banks and Banking—Powers of Bank Commissioner to Conserve Assets of Failed Bank — Purchase and Foreclosure of Mortgages.**

Where the Bank Commissioner took charge of an insolvent bank, and, in order to conserve the interests of the depositors' guaranty fund, purchased and had indorsed to him a note secured by a first mortgage on real estate upon which such insolvent bank held a second mortgage, and the state brought suit for the amount due on the note purchased and for the foreclosure of the mortgage securing the same, the makers of said note and mortgage cannot be permitted in said action to question the authority of the Bank Commissioner to purchase said note or the right of the state to maintain said action.

Error from District Court, Caddo County; Will Linn, Judge.

Action by the State of Oklahoma ex rel. S. P. Freeling, Attorney General, against William E. Smith and Maude E. Smith. Judgment for defendants, and plaintiff brings error Reversed and remanded, with directions.

George F. Short, Atty. Gen., William H. Zwick, Asst. Atty. Gen., and Wendell Johnson, Atty. for Banking Department, for plaintiff in error.

Bristow & McFadyen, for defendants in error.

NICHOLSON. J. This was an action by the state, on the relation of the Attorney General, as plaintiff, against William E. Smith, Maude E. Smith, Bartlett Brothers, and Stecker State Bank, as defendants, to recover judgment on certain promissory notes executed by the defendants William E. Smith, and Maude E. Smith, and for the foreclosure of certain mortgages securing payment of said notes.

The petition contains three counts. By agreement of the parties, the first count was submitted to the court, the second and third counts were submitted to the jury. A verdict was returned in favor of the defendants on the second count, and in favor of the plaintiff on the third count. The court sustained defendants' demurrer to the plaintiff's evidence on the first count, and it is

this action of the court of which the plaintiff complains.

The facts surrounding the transaction are that on the third day of June, 1913, the Bank Commissioner of the state took charge of the Anadarko State Bank, as an insolvent bank, taking possession of the books, records, and assets of said bank for the purpose of collecting debts due it, converting its assets into cash and paying the claims of unsecured creditors, in the manner provided by law; that among the assets of said bank was a note for the sum of $3,975, executed by the defendants William E. Smith and Maude E. Smith to the bank and secured by a mortgage upon certain lands in Caddo county, which mortgage was junior and inferior to the mortgage for the sum of $3,700, executed and delivered by said defendants (Smiths) to one Richard Conway. The land covered by said mortgages was insufficient in value to pay both mortgage debts, and the Bank Commissioner, in order to conserve the interests of the depositors' guaranty fund, purchased the Conway note and mortgage, which were duly indorsed and assigned to the Bank Commissioner, and this suit was instituted to foreclose both mortgages.

The defendants Smith pleaded payment of the note for $3,975, and the jury found that the same had been paid. As a defense to plaintiff's cause of action on the note for $3,700, the Smiths, after denying generally the allegations of the petition, pleaded that the plaintiff was not the legal owner and holder of said note and mortgage; was not the real party in interest; that said note and mortgage were not purchased from money derived from the fee fund of the Banking Board of the state; that no funds had been appropriated by the Legislature out of which such securities could be purchased, and that the purchase thereof was unauthorized and unlawful.

The inquiry presented here is, whether or not the Bank Commissioner was, under the law, authorized to purchase the note and mortgage from Conway, and if not, can the defendants be heard to urge, as a defense, the unauthorized act of such commissioner in purchasing said note and mortgage?

It was stipulated by the parties that the money with which the Conway note and mortgage was purchased was procured from the depositors guaranty fund of the state, and not from the fee fund, as alleged in plaintiff's petition, and that said transaction had not been ratified by the Legislature.

We can find no constitutional or statutory

provision expressly prohibiting the Bank Commissioner from purchasing securities in the progress of liquidating insolvent banks, but under the provisions of section 299, Rev. Laws 1910, as amended by chapter 22, Sess. Laws 1913, the depositors' guaranty fund must be used solely for the purpose of liquidating deposits of failed banks, and retiring warrants provided for in the act. So, it would seem that the Bank Commissioner could not lawfully divert any part of such fund from the purpose for which it was created, and that he exceeded his authority in purchasing said note, and mortgage. Assuming this to be true, and assuming that his action in this regard amounted to a misapplication of such fund, does it follow that the defendants may rely on such unauthorized act for the purpose of avoiding payment of their obligation?

It is not contended that defendants would have any defense to the note in the hands of Conway, and if they had, such defense would be available to them in this action, for the note was transferred to the Bank Commissioner after its maturity, but, without in any manner questioning the validity of the note and without any intimation that they were not indebted to Conway in the amount thereof, the defendants seek to avoid payment on the ground that the Bank Commissioner was, under the law, without authority to purchase the note, and therefore the plaintiff is not the owner thereof, and is not entitled to recover thereon.

There is no legislative act declaring void any such transaction as here involved, or preventing the state from maintaining an action on any note or other evidence of indebtedness coming into the hands of the Bank Commissioner, and had the Legislature intended to prevent a recovery by him, it would have been a simple matter to provide by appropriate legislation that notes so acquired should be void in his hands.

No case has been cited dealing with a state of facts similar to the facts in this case, and doubtless none can be found, but many cases may be found which, on principle, require a recovery by the state. Thus, in Union National Bank v. Matthews, 98 U. S. 188, it was held that where a national bank loaned money upon real estate in violation of the national banking law, a party who has had the benefit of the agreement cannot be permitted, in an action founded upon it, to question its validity. In Buhrer v. Baldwin, 137 Mich. 263, it was held that one who guarantees the payment of county funds, to be deposited in an unincorporated bank, was liable to the county therefor. although the contract to deposit in such bank was

prohibited by statute and void. And, in Deming et al. v. State, 23 Ind. 416, which was a suit to foreclose a mortgage upon certain real estate given to secure a loan of school funds, and at the time the loan was made there was a prior incumbrance upon the land mortgaged, of which fact the auditor had notice, and the statute forbade the making of loans of school funds on lands upon which there was a prior incumbrance, yet the court held the mortgage valid as against the borrower. See, also, Scotten v. State, 51 Ind. 52; Leazure v. Hillegas, 7 Serg. and Raube, 313; Bank v. North, 4 John Chan. 370; Flickner v. Bank, 8 Wheat (U. S.) 338; Smith v. Sheeley, 12 Wal. 358, 20 L. Ed. 430; Local Investment Co. v. Humes, 51 Okla. 251, 151 Pac. 878.

The defendants received full value for the note from Conway, and no complaint is made of that transaction. Conway received full value of the note from the state. and indorsed the note to the Bank Commissioner. True, the money paid to Conway was, in a sense, trust funds held by the state, as trustee, and the state through one of its executives may have purchased the note without authority of law. This act may have amounted to a misapplication of the trust fund, but if this be true, who, save the state, or someone interested in the fund, would be heard to complain?

The action of the Bank Commissioner could be questioned by the state. His act, at most, amounted merely to a violation of his duty as a public official, and the state had its remedy against him which it could have invoked. This was a function of the state government, and a private person cannot directly or indirectly usurp this function of the state. Union National Bank v. Matthews, supra.

It would be very inequitable and unjust to permit the defendants to repudiate a contract, the benefit of which they retain, on the simple question of want of authority on the part of the other party to make the contract. The matter of misapplication of funds in the hands of the Bank Commissioner is no concern of the Smiths. They owe the debt and payment thereof to the plaintiff will discharge them from liability. A court of equity is always reluctant to make a decree which will effect a forfeiture, and that is the effect of the judgment in this case. Under these circumstances the defense, which amounts to that of ultra vires, does not address itself favorably to the mind of the court. The judgment is, in our opinion, contrary to law, and we cannot permit it to stand.

Therefore, the judgment of the trial court

is reversed, and the cause remanded, with directions to enter judgment for the plaintiff for the amount found due on the note and a foreclosure of the mortgage securing same.

JOHNSON, C. J., and McNEILL, COCHRAN, and MASON, JJ., concur.