BUHRER v. BALDWIN.

137   263
142   487

1. COUNTIES—ACTIONS—PARTIES—COUNTY TREASURER.

137   263
f158  ² 35

Suit is properly brought in the name of the county treasurer, for the use and benefit of the county, to recover upon a guaranty of payment of money deposited in a bank by a former treasurer for the county.

2. GUARANTY—COUNTY FUNDS—DEPOSIT IN BANK.

One who guarantees the payment of county funds, to be deposited in an unincorporated bank, is liable to the county therefor, although the contract to deposit in such bank was prohibited by statute and void.

3. PARTIES—COUNTIES—BOARD OF AUDITORS.

The board of auditors of Wayne county was not a necessary party to a suit, brought in the name of the county treasurer, for the benefit of the county, upon a guaranty of payment of money deposited in an unincorporated bank, in pursuance of a contract entered into by the county treasurer and the board of auditors of the county with such bank.

4. BONDS—OBLIGEE—COUNTY TREASURER.

Where a statute required that a bond should be made to the county to secure the repayment of money deposited by the treasurer in a bank, a written guaranty of payment, under seal, indorsed on a contract by a bank to the county treasurer and board of auditors of the county, is a substantial compliance with the statute.

5. SAME—COMMON-LAW OBLIGATION.

Such bond may be supported as a common-law obligation, though it does not strictly conform to the statute.

6. GUARANTY—ACCEPTANCE—NOTICE.

Where a contract of guaranty recites a consideration, no notice of acceptance is necessary in order to bind the guarantor.

7. SAME—RELEASE OF GUARANTOR—TRANSFER OF CREDIT.

Where a county treasurer gave a check for the amount due the county from a bank to his successor, who deposited the check in the same bank, the transaction was not such a payment as would release one who had guaranteed the payment of the fund.

Error to Wayne; Frazer J. Submitted April 8, 1904. (Docket No. 26.) Decided July 16, 1904.

Assumpsit by Charles A. Buhrer, treasurer of Wayne county, for the use and benefit of said county, against Stephen Baldwin, Jesse H. Farwell, and Merrill B. Mills on a contract of guaranty. There was judgment for plaintiff on a verdict directed by the court, and defendants bring error. Affirmed.

*Tarsney & Fitzpatrick*, for appellant Baldwin.

*F. H. & G. L. Canfield*, for appellants Farwell and Mills.

*Ormond F. Hunt*, Prosecuting Attorney (*C. D. Joslyn*, of counsel), for appellee.

CARPENTER, J. August 20, 1895, Alexander I. Mc-Leod, county treasurer of Wayne county, the board of auditors of said county, and A. Ives & Sons, a copartnership engaged in the business of banking in the city of Detroit, entered into a written agreement whereby said A. Ives & Sons agreed to "receive and safely keep all such surplus funds of the county of Wayne as may be offered or deposited by the treasurer and board of auditors of said county, and to reimburse and pay the same to said treasurer or his successor in office, or whoever may be lawfully entitled to receive the same, whenever called for, and to pay interest on said surplus funds * * * at the rate of 3½ per cent. per annum, to be computed on daily balances." On the same day the defendants signed a writing guaranteeing "the full payment of any and all sums and balances which may become due to the treasurer of the county of Wayne or his successor in office upon or by virtue of the above and foregoing agreement, according to the terms and conditions thereof."

At the expiration of the term of office of said Alexander I. McLeod there was a balance in the hands of said A. Ives & Sons, deposited by virtue of the foregoing agreement, of $5,630. A check for this amount was given by said McLeod to plaintiff, his successor in office. Plaintiff, instead of having the check cashed, passed the same to his credit as county treasurer on the books of said A. Ives & Sons, who, about 15 months thereafter, became insolvent. This suit is brought to obtain this balance by enforcing the contract of guaranty. It is brought in the name of the county treasurer, "for the use and benefit of the county of Wayne," by the prosecuting attorney of said county. Plaintiff recovered verdict and judgment in the court below. Defendants seek to reverse that judgment, for several reasons.

1. It is insisted that the suit cannot be maintained in the name of the county treasurer. We think this objection is answered by *Berrien County Treasurer* v. *Bunbury*, 45 Mich. 79 (7 N. W. 704).

2. It is insisted that no action can be maintained on the writing signed by defendants, because it was executed in violation of law. The law in question is Act No. 393 of the Local Acts of 1879, § 1. This act made it—

"The duty of the county treasurer of the county of Wayne to deposit daily his entire receipts from all sources, and all moneys, drafts, or checks on hand, to the credit of the county of Wayne, in such bank or banks, incorporated under the laws of this State or the United States, as may be designated by the treasurer and the board of auditors of said county as the depository of the funds of the county."

The act makes it a felony for the county treasurer to violate its provisions. It is contended that as A. Ives & Sons was a partnership, the deposit in question in its bank was prohibited and made a felony by this statute, and that, as a consequence, the undertaking of the defendants was an illegal contract, which cannot be enforced. If this suit is to be regarded as the personal suit of the county treasurer, who has violated the statute, there would be great force in this contention. It is earnestly insisted that the court should so regard it; and it is said that, if this action should fail, the county will lose nothing, since it is fully indemnified by the bond of the county treasurer. We cannot regard this suit as the personal suit of the county treasurer. The form of the declaration, the prosecution of the suit by the prosecuting attorney, the objection already discussed and disposed of, all indicate that it is a suit by the county to recover its money. The fact, if it be a fact, that the people of the county of Wayne have double security for this money, is a circumstance of no legal importance. If they are so secured, the officials of that county, and not this court, have the right to determine to which security they will first resort. They have determined to resort to the obligation of defendants. Nor does this record enable us to say with certainty that the sureties on the treasurer's bond are now responsible. It cannot, therefore, be said that the county will not lose its money if defeated in the present action.

Assuming this suit to be the suit of the county to recover the money illegally deposited with A. Ives & Sons, does the statute prevent the enforcement of the contract? Did the legislature, in enacting the statute of 1879, intend that those who agreed to make good a loss to the people, caused by a violation of that law, should be released from their contract? No such legislative intent is expressly declared in the statute. Shall it be inferred? The learned trial judge, in speaking of the statute, said:

"It simply means that this was a protection to the money of the people * * * against the county treasurer depositing it in a place that the lawmakers deemed insecure. * . * * This statute was not enacted for the purpose of preventing the county getting back their money. * * * It seems to me it would be a very unreasonable interpretation of the statute" to hold, "because a public officer violates the law, and does an act that he has no right to do, that therefore the people lose their money."

This reasoning, in our judgment, is sound, and is sustained by authority. In *Deming* v. *State,* 23 Ind. 416, suit was brought to foreclose a mortgage securing the payment of school funds. These funds were loaned on property which was subject to a prior incumbrance, in violation of law, requiring such money to be loaned on unincumbered property. In opposition to the suit it was contended that the mortgage was void, and could not be enforced. This defense was declared untenable, and the reasoning of the court so thoroughly covers this case that we insert it in this opinion:

"These provisions [the statutory provisions respecting loaning on incumbered land] defining the duty of the auditor were obviously intended as safeguards for the preservation of the fund. Their whole tenor indicates a careful purpose of the legislature to make every loan secure beyond any contingency. This, too, was unquestionably the only object sought to be attained. Should we hold that the mortgage is void because the auditor chose to disregard that provision of the statute which required him to make no loan upon lands incumbered, we should

defeat the very object of the law, and enable the party who had obtained the loan by taxing the good nature of the auditor to pocket the money obtained, without being required to refund it. And this, too, it may be, not at the expense of the auditor or his sureties; for after the lapse of ten years his official bond may furnish no indemnity whatever, and the school fund must sustain a loss which its owners, the inhabitants of the township, had no power to prevent. Their agent, the auditor, * * * might thus by design squander their fund at his pleasure. Every instinct of justice revolts at the proposition, and the conscience is at once shocked by the claim of exemption made by the borrower upon such a pretext. * * * The general rule of law that a contract prohibited by statute is void is familiar, and we do not lose sight of it. It is a wholesome rule in every case where it is properly applicable. The general doctrine as to such contracts is that the courts will not enforce them, nor aid in the recovery of money paid in pursuance of their terms; but parties who have contracted in violation of law will be left without remedy whenever they are in pari delicto. The plain reason and purpose of the rule commends it to every enlightened judgment. It is to secure obedience to the statute which has forbidden the thing to be done, and thereby aid in accomplishing the legislative intention. Thus the violation of public law is often punished, and thereby obedience to it secured. But the rule is properly applied only where the reason upon which it is founded exists. 'The law ceases with the reason thereof,' and it is a grave error to regard it as a merely arbitrary rule, applicable to all contracts which are prohibited by statute. It is generally applicable, because the thing prohibited is usually immoral, or against public policy. Gaming contracts, contracts made on the Sabbath, contracts of champerty and maintenance, and many others of like nature might be mentioned as examples. But sometimes contracts are prohibited for the mere protection of one of the parties against an undue advantage which the other party is supposed to possess over him. In such cases the parties are not regarded as being equally guilty, and so the rule is not deemed applicable, though both have violated the law."

In *Scotten* v. *State*, 51 Ind. 52, school funds had been loaned upon a promissory note upon which appellant was

surety, contrary to a statute which required such loans to be "secured by mortgage upon real estate." It was held that, under the authority of *Deming* v. *State*, supra, the note was enforceable against appellant as well as his principal. See, also, *National Bank* v. *Matthews*, 98 U. S. 621; *In re Burt*, 12 Blatchf. 252 (Fed. Cas. 2,209); *Lester* v. *Howard Bank*, 33 Md. 558 (3 Am. Rep. 211); *Savings Bank of San Diego Co.* v. *Burns*, 104 Cal. 473 (38 Pac. 102); *Brittan* v. *Oakland Bank of Savings*, 124 Cal. 282 (57 Pac. 84, 71 Am. St. Rep. 58); *Bibb* v. *Miller*, 74 Ky. 306.

3. It is insisted that the board of auditors of Wayne county was a necessary party to this suit. While the board of auditors was a party to the original contract, the money was to be paid to the county treasurer, and the writing signed by defendants contains no reference to the board of auditors, but guarantees "the full payment of any and all sums and balances  *  *  *  to the treasurer of the county of Wayne or his successor in office." We do not think the board of auditors should have been joined as plaintiff for a breach of this contract. See *Sprague* v. *Wells*, 47 Minn. 504 (50 N. W. 535).

4. It is insisted that defendant's obligation does not comply with the statute heretofore cited (Act No. 393 of the Local Acts of 1879), which provides that "said bonds shall be made to the county" (Id. § 2). As already indicated in this opinion, the bond does run to the county treasurer for the county. This we think a substantial compliance with the statute. See *Tevis* v. *Randall*, 6 Cal. 632 (65 Am. Dec. 547). It may also be said that this bond may be supported as a common-law obligation, though it does not technically conform to the statute. See *County of Bay* v. *Brock*, 44 Mich. 45 (6 N. W. 101).

5. It is insisted that defendants are not bound by their guaranty, because they have never been notified of its acceptance. We think the true theory upon which guarantors are entitled to notice of acceptance is that their undertaking is a mere offer, and does not become a binding

contract until such notice. See *Davis* v. *Wells*, 104 U. S. 159. It results from this theory that guarantors are entitled to notice of acceptance only when their undertaking can be construed to be an offer of guaranty. When, however, that undertaking recites a consideration, though, as in this case, that consideration is merely nominal, conclusive evidence is furnished that the guaranty has been made with the assent of the obligee, communicated to the guarantors; and in such cases notice of acceptance is unnecessary. See *Davis* v. *Wells*, 104 U. S., at page 167; *Davis Sewing Machine Co.* v. *Richards*, 115 U. S., at page 527 (6 Sup. Ct. 173); *Taylor* v. *John A. Tolman Co.*, 47 Ill. App. 264; *Lawrence* v. *McCalmont*, 2 How. (U. S.) 426; *De Cremer* v. *Anderson*, 113 Mich., at page 580 (71 N. W. 1090).

6. It is claimed that the contract was performed, and the defendants released from their obligation, by the delivery of the check of Treasurer McLeod to Treasurer Buhrer, and his redeposit of the same with A. Ives & Sons. Really this amounted to no more than a transfer of credit from the outgoing to the incoming treasurer on the books of A. Ives & Sons. This transaction, according to the authorities cited in defendants' brief, did amount to a payment by the former treasurer to his successor. But it was in no sense a payment by A. Ives & Sons of the balance due from them "to the treasurer of the county of Wayne or his successor in office."

It results from these views that the judgment of the court below should be affirmed, with costs.

Moore, C. J., and Montgomery, J., concurred. Grant and Hooker, JJ., did not sit.