EWING *et al.* v. BOARD OF COMMISSIONERS OF ELLIS COUNTY *et al.*

No. 5980. Opinion Filed March 14, 1916.

(156 Pac. 229.)

1. **BANKS AND BANKING—Bonds—County Depository—Action for Breach of Bond—Plea of Ultra Vires—Validity of Bond.** Pursuant to Rev. Laws 1910, sec. 1540, the county commissioners of E. county designated a certain bank in the county as the depository of the funds of the county and designated a sum certain as the amount of the bond to be given by the bank, whereupon the bank executed the bond with itself as principal and certain individuals as sureties and received a deposit of the county's funds from the county treasurer and breached the bond. **Held,** assuming the bond **ultra vires,** the plea of **ultra vires** is not available to the bank or its sureties in an action by the board against them on the bond. **Held,** further, that although the

bond was not a surety company's bond, but a bond signed by sureties, and for that reason falls short of the statutory requirement, the same is valid as a common-law bond.

2.    ESTOPPEL—Validity of Contract—Power to Execute—Right to Question—Acceptance of Benefit.  Where it is a question of authority to contract, arising on a question of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted, in an action founded upon it, to question its validity.

(Syllabus by the Court.)

*Error from District Court, Ellis County;*
*James R. Tolbert, Assigned Judge.*

Action by the Board of County Commissioners of Ellis County against the First State Bank of Shattuck and others.  From the judgment, D. C. Ewing and others, defendants, bring error.  Affirmed.

*Burford & Burford*, for plaintiffs in error.

*Frank E. Ransdell*, for defendants in error.

TURNER, J.  On September 3, 1912, the board of county commissioners of Ellis county, in the district court of that county, sued the First State Bank of Shattuck as principal, and W. L. Helton, Fred Becker, W. G. Soars, D. C. Ewing, and G. Longhoefer, as sureties, and Jacob Webber, as receiver of said bank, for a breach of the following bond:

"Know all men by these presents, that the First State Bank of Shattuck, Oklahoma, a corporation duly organized and existing under and by virtue of the laws of the State of Oklahoma, and the following officers, O. E. Helton, president; W. J. Ewing, cashier, as principal, and Gottfd. Longhoefer, as sureties, are held and firmly bound unto the board of county commissioners of Ellis county, in the State of Oklahoma, in the full sum of twenty-five thousand and 00-100 dollars, to which payment, well and

truly to be made, the said principal and sureties bind themselves, their and each of their heirs, executors, successors and assigns, jointly and severally, firmly by these presents.

"Whereas the board of county commissioners of Ellis county, State of Oklahoma, duly acting in accordance with law, has designated the First State Bank of Shattuck, Ellis county, Oklahoma, as a depository of the county funds of Ellis county, Oklahoma, and has designated the sum of $25,000 as the amount of the bond to be given by said bank:

"Now, therefore, the condition of this obligation is such that if the said First State Bank of Shattuck, Oklahoma, shall safely keep the moneys constituting the county funds of Ellis county, Oklahoma, deposited with it by the treasurer of said Ellis county, Oklahoma, and shall promptly pay all checks and drafts drawn by said treasurer against such county funds, including all interest to accrue thereon at the agreed upon rate per centum on all monthly balances, then this obligation to be void; otherwise, to remain in full force and virtue.

"Signed and sealed this 23rd day of March, A. D. 1911.

"FIRST STATE BANK OF SHATTUCK, OKLAHOMA.
　　　　　　　　"By O. E. HELTON, *President.*
"Attest: W. J. EWING, *Cashier.*

"Sureties: W. L. HELTON, FRED BECKER, W. G. SEARS, D. C. EWING, GOTTFD. LONGHOEFER."

After the sureties had demurred to the petition, which was overruled, and a demurrer had been sustained to their answer in part, there was trial to the court upon the following:

"Agreed Stipulation of Facts.

"It is hereby stipulated by and between the plaintiff and the defendants that on the 10th day of January, 1911, the board of county commissioners of Ellis county desig-

nated the First State Bank of Shattuck as a depository for county funds.

"That, pursuant to the order of said board said First State Bank of Shattuck executed a bond to the board of county commissioners in the sum of $25,000.00, with the defendants, Fred Becker, W. G. Sears, D. C. Ewing, W. L. Helton and Gottfried Longhoefer as sureties, to secure the payment of any sums deposited in said bank by the county treasurer of said county; which bond was duly approved by the board of county commissioners on 3rd day of April, 1911, and filed in the office of the county clerk of Ellis county.

"That the copy of bond, marked Exhibit A and attached to plaintiff's petition herein, is a true copy of said bond, and the same is hereby made a part of this stipulation.

"That thereafter the county treasurer deposited in said First State Bank of Shattuck the funds belonging to said county, divers sums of money, until on the 3rd day of September, 1912, there was to his credit in said bank of said funds the sum of $10,737.49, which sum has never been paid.

"That on the said 3rd day of September, 1912, John F. Rogers, the duly elected and acting county treasurer of Ellis county, as such treasurer, drew a draft on said bank for $10,737.49, and said bank refused to pay the same.

"That said sum is due the county from said bank, and has been due since said date, September 3, 1912.

"That said bank has, by the judgment of the district court of Ellis county, been adjudged insolvent, and a receiver appointed for all its assets.

"That said receiver now has in his hands of the property of said bank a considerable sum in cash and several thousand dollars of assets which he is endeavoring to convert into cash for the purpose of liquidating the claim of Ellis county, and said court has ordered that the

proceeds of said assets be applied to the payment of the deposit of Ellis county in said bank.

"That the defendants, D. C. Ewing, W. L. Helton, W. J. Sears, Fred Becker and Gottfried Longhoefer, and each of them, are sureties on said bond for the said First State Bank of Shattuck, which is the principal thereon. That they are each accommodation sureties, and each signed the same without compensation, and have never received anything whatever for becoming sureties for said bank.

"That the defendants, D. C. Ewing, W. G. Sears, Fred Becker and Gottfried Longhoefer, have each specially pleaded their rights as sureties and demanded that no execution shall issue against them or either of them until the assets of the principal available for the payment of a judgment herein shall be first exhausted.

"That the defendant W. L. Helton has made default in said cause.

"It is agreed that the above stipulation may be taken as true for the purpose of this case, and that the court may render judgment thereon without the intervention of a jury, this October 23, 1913."

(Signed by counsel on both sides.)

There was judgment for plaintiff and against both principal and sureties on the bond for $10,737.49 and costs, and the sureties bring the case here, making the bank and its receiver parties defendant in error.

They assign that the court erred because, they say:

"That the bank had no power to execute a bond of this character, the board of county commissioners had no discretion or power to accept such bond, and same is not binding on the sureties."

In support of this they rely on Rev. Laws 1910, section 1540, and say:

"Before authorizing any bank to become a depository, the board of county commissioners shall take from such bank a bond in a sum equal to the largest approximate amount that may be deposited at any one time. The law then specifically designates the character of bond and class of securities which the board of county commissioners may accept from any bank: 'Said bond may be that of some surety company empowered to do business in the Territory (now State) of Oklahoma, * * * or in lieu thereof, or in addition thereto, security may be taken consisting of: First, government bonds; second, state bonds or warrants; third, county bonds or warrants; fourth, other bonds or warrants issued by any municipality under authority of the laws of the state.' * * * The Legislature, by specifically designating that the bond authorized 'may be a surety bond of some surety company empowered to do business in the state,' thereby expressly excludes the authority to give, on the part of the bank, or accept, on the part of the board of county commissioners, any other bond than that designated. The rule, '*Inclusio unius est exclusio alterius*' applies here with all its force, and to fail to apply it is to disregard one of the oldest and most favored maxims of interpretation."

In other words, the contention is that because the statute expressly requires the bond to be that of a surety company, it impliedly prohibits the bank from giving or the commissioners from accepting a bond with sureties as here, and for that reason this bond is *ultra vires* and void. Assuming such to be true, those facts are insufficient to defeat a recovery of this bond. This for the reasons stated in *Edwards County v. Jennings et al.* (Tex. Civ. App) 38 S. W. 585, where the court, quoting approvingly from *Railway Co. v. McCarthy*, 96 U. S. 258, 24 L. Ed. 693, said:

"The doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail,

where it would defeat the ends of justice or work a legal wrong."

In *National Bank v. Matthews*, 98 U. S. 621, 25 L. Ed. 188, one Logan and a Mrs. Matthews executed and delivered to a certain company their joint and several promissory note for $15,000, payable to the order of a certain firm two years thereafter, with interest. Its payment was secured by a deed of trust on a certain tract of Mrs. Matthews' land in Missouri. Shortly thereafter the deed of trust was assigned to the defendant bank and the firm failed to pay the loan at maturity. The bank directed the trustee named in the deed of trust to sell. Whereupon Mrs. Matthews filed her bill in the probate state court to enjoin the sale. The bank in its answer set up that it had accepted the note and deed of trust as security for $15,000 advanced and loaned to the firm on the security of the note and deed of trust. The state court decreed a perpetual injunction, on the ground that the loan by the bank to the firm was made upon real estate security, that it was forbidden by law, and that the deed of trust was therefore void. The Supreme Court of the state affirmed the decree; but on writ of error to the Supreme Court of the United States, the cause was reversed, and it was held that the bank was entitled to enforce collection of the note by a sale of the lands. In answer to the plea of *ultra vires,* the court said:

"A court of equity is always reluctant in the last degree to make a decree which will effect a forfeiture. The bank parted with its money in good faith. Its garments are unspotted. Under these circumstances, the defense of *ultra vires,* if it can be made, does not address itself favorably to the mind of the chancellor."

And further:

"Sedgwick (Stat. and Const. Constr. 73) says: 'Where it is a simple question of authority to contract, arising either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted in an action founded upon it to question its validity. It would be in the highest degree inequitable and unjust to permit a defendant to repudiate a contract, the benefit of which he retains.'"

In *Savings Bank v. Burns,* 104 Cal. 473, 38 Pac. 102, it is said in the headnotes:

"Where a mortgage was given to the president of a savings bank, which he had promised to renew and extend, but instead of such renewal he obtained a loan from the savings bank in payment of his note and mortgage, upon the execution of a new mortgage from his debtor to the bank, such transaction is no defense to a foreclosure of the mortgage by the bank."

See, also, *Brittan v. Oakland Bank of Savings,* 124 Cal. 282, 57 Pac. 74, 71 Am. St. Rep. 58.

In *Hitchcock v. Galveston,* 96 U. S. 341, 24 L. Ed. 659, the court, quoting approvingly from *State Board of Agriculture v. Citizens' Street Railway Co.,* 47 Ind. 407, 17 Am. Rep. 702, said that:

"Although there may be a defect of power in a corporation to make a contract, yet if a contract made by it is not in violation of its charter, or of any statute prohibiting it, and the corporation has by its promise induced a party relying on the promise and in execution of the contract to expend money and perform his part thereof, the corporation is liable on the contract."

But this court has put this question at rest in *Crowder St. Bank v. Aetna Powder Co. et al.,* 41 Okla. 394, 138 Pac. 392, where the authorities are reviewed at length. In that case the bank guaranteed the account

of one Lovejoy to a powder company. In holding the bank liable to the company for the amount of the account, in the syllabus the court said:

"It may be considered as settled law in this state today that, when a corporation goes outside of its legitimate business and makes a contract, and that contract is executed, and the corporation has received the benefits of the contract, the courts will not listen to a plea of *ultra vires.*"

See, also, *Shawnee Nat. Bank v. Purcell Wholesale Groc. Co.,* 34 Okla. 34, 124 Pac. 603, 41 L. R. A. (N. S.) 494, where the authorities are to the same effect.

The doctrine that one who has had the benefit of an agreement will not be permitted in an action founded upon it to question its validity extends to individuals as well as corporations.

*In re Burt et al.,* 12 Blatchf. 252, Fed. Cas. No. 2,209, the facts were that on August 1, 1871, B. and T., presumably a partnership, manufacturers of doors, blinds, etc., entered into a contract with an agent of the state prison at Auburn for the labor and services of a certain number of convicts, whose services were to be used in a room in the prison to be provided by the agent. Among other things, the contract provided that any debt which might be due from them upon the contract and owing to the agent should be a lien upon the property of the company in favor of the state, upon the machinery and tools used and owned by the contractors operating such contract upon the prison premises. After operating the contract for a while, B. and T. became indebted to the agent and thereafter were adjudged bankrupts. The statute provided that the contract should contain a clause requiring the contractor to deposit a certain sum of

money, and that no contract should be valid, unless such deposit should be made. In a suit to determine whether the contract secured the state a lien upon the machinery, tools, etc., of the bankrupts, it was held that the contractors could not, by reason of their failure to make such deposit, insist that the contract was invalid. In passing on this point the court said:

"Nor is there force in the objection that the contract is void because no deposit was made by the contractor, when the contract was entered into. The statute provides that a clause shall be inserted in the contract, requiring the contractor to deposit with the comptroller a sum of money not less than $500, nor more than $2,000, as the inspector may determine, 'and no contract shall be valid until such deposit shall be made.' This is a provision for the benefit of the state, and in which the contractor can claim no beneficial interest. He cannot insist upon the validity of a contract until he performs this requirement. But his neglect and failure cannot be claimed by himself for his own benefit. The state may say, 'you have not performed what the law requires, and we annul the contract'; but the contractor is not thus at liberty to take advantage of his own neglect. There are numerous provisions of the statute containing similar language, as, that the conveyance shall be 'absolutely void,' or the contract shall be 'utterly void'; but it has never been held that the party in a case, when he was in default, could urge his own default as a ground of the invalidity of the contract, and in his own favor."

In *Scotten v. State*, 51 Ind. 52, school funds had been loaned on a promissory note with appellant as surety, contrary to the statute which required such loans to be secured by mortgage upon real estate. It was there held, under the authority of *Deming v. State*, 23 Ind. 416, that the note was enforceable against the appellant as surety,

as well as his principal on the note. Turning to that case, we find that there a suit was brought to foreclose a mortgage given to secure the repayment of school funds which had been loaned on property which was subject to a prior incumbrance, in violation of the statute, which required the same to be loaned on unincumbered property. Opposing a recovery, it was contended that the mortgage was void and unenforceable, but the court held not so and said:

"These provisions (the statutory provisions respecting loaning on incumbered land), defining the duty of the auditor, were obviously intended as safeguards for the preservation of the fund. Their whole tenor indicates a careful purpose of the Legislature to make every loan secure beyond any contingency. This, too, was unquestionably the only object sought to be attained. Should we hold that the mortgage is void, because the auditor chose to disregard that provision of the statute which required him to make no loan upon lands incumbered, we should defeat the very object of the law, and enable the party who had obtained the loan by taxing the good nature of the auditor, to pocket the money obtained, without being required to refund it. And this too, it may be, not at the expense of the auditor or his sureties; for, after the lapse of ten years, his official bond may furnish no indemnity whatever, and the school fund must sustain a loss which its owners, the inhabitants of the township, had no power to prevent. Their agent, the auditor, * * * might thus by design squander their fund at his pleasure. Every instinct of justice revolts at the proposition, and the conscience is at once shocked by the claim of exemption made by the borrower upon such a pretext. * * * The general rule of law that a contract prohibited by statute is void, is familiar, and we do not lose sight of it. It is a wholesome rule in every case where it is properly applicable. The general doctrine as to such contracts is, that the courts will not enforce

them, nor aid in the recovery of money paid in pursuance of their terms, but parties who have contracted in violation of law will be left without remedy whenever they are *in pari delicto*. The plain reason and purpose of the rule commends it to every enlightened judgment. It is to secure obedience to the statute which has forbidden the thing to be done, and thereby aid in accomplishing the legislative intention. Thus, the violation of public law is often punished, and thereby obedience to it secured. But the rule is properly applied only where the reason upon which it is founded exists. 'The law ceases with the reason thereof,' and it is a grave error to regard it as a merely arbitrary rule, applicable to all contracts which are prohibited by statute. It is generally applicable because the thing prohibited is usually immoral, or against public policy. Gaming contracts, contracts made on the Sabbath, contracts of champerty and maintenance, and many others of like nature, might be mentioned as examples. But sometimes contracts are prohibited for the mere protection of one of the parties against an undue advantage which the other party is supposed to possess over him. In such cases the parties are not regarded as being equally guilty, and so the rule is not deemed applicable, though both have violated the law."

All the foregoing cases are cited in support of the holding of the court in *Buhrer v. Baldwin,* 137 Mich. 263, 100 N. W. 468. In that case the governing statute (Local Acts 1879, No. 393, section 1) made it "the duty of the county treasurer of the county of Wayne to deposit daily his entire receipts from all sources, and all moneys, drafts, or checks on hand to the credit of the county of Wayne, in such bank or banks incorporated under the laws of this state or the United States, as may be designated by the treasurer and the board of auditors of said county as the depository of the funds of the county." The act made it a felony for the county treasurer to violate

its provisions. On August 20, 1895, McLeod, county treasurer of Wayne county, the board of auditors of said county and Ives & Sons, a copartnership, engaged in the business of banking in a certain city of that state, entered' into a written agreement in which Ives & Sons agreed to receive and safely keep the county funds deposited with them by the treasurer and board of auditors of said county, and to reimburse the treasurer or his successors in office, when they were called for, presumably pursuant to law. On the same day they signed a written instrument, guaranteeing "the full payment of any and all sums and balances which may become due to the treasurer of the county of Wayne or his successors in office upon or by virtue of the above and foregoing agreement, according to the terms and conditions thereof." Suit was brought to obtain the balance due from Ives & Sons, and to enforce the contract of guaranty. To defeat recovery, it was contended that as Ives & Sons was a copartnership the deposit was prohibited and made a felony by statute, and hence the contract was illegal and could not be enforced; but the court held not so and enforced the contract upon the authorities stated, and held, among other things, that the bond might be supported as a common-law obligation, though not strictly in conformity with the statute. In the syllabus the court said:

"One who guarantees the payment of county funds, to be deposited in an unincorporated bank, is liable to the county therefor, although the contract to deposit in such bank was prohibited by statute and void."

Again:

"Where a statute required that a bond should be made to the county to secure the repayment of money

deposited by the treasurer in a bank, a written guaranty of payment, under seal, indorsed on a contract by a bank to the county treasurer and board of auditors of the county, is a substantial compliance with the statute.

"Such bond may be supported as a common-law obligation, though it does not strictly conform to the statute."

Now if in that case, where the deposit was made with a partnership and secured by a partnership obligation, in violation of statutes which required the deposit to be made in a bank incorporated under the laws of the United States, it can be held that the partnership agreement was valid as a common-law bond, we see no reason why the bond in question cannot also be held so to be, although taken with sureties in violation of the statute requiring it to be the bond of a surety company. 5 Cyc. 748, says:

"A statutory bond may be good at common law, though insufficient under the statute because of noncompliance with its requirements, provided it does not violate public policy or contravene any statute."

In *Lowe et al. v. City of Guthrie*, 4 Okla. 287, 44 Pac. 198, it was said of the bond there in question:

"But if the bond falls so far short of the statutory requirements as to be invalid as a statutory bond, it may be treated as a common-law bond, unless prohibited by some statute, or is against public policy."

See, also, *Woodward v. Bingham*, 25 Okla. 400, 106 Pac. 843; *Blanchard v. Anderson*, 27 Okla. 732, 113 Pac. 717.

We are therefore of opinion that the court did not err in holding, in effect, from the facts agreed upon, that the doctrine of *ultra vires* was not available to defend-

ants in a suit upon the bond; that the same, although it falls short of the statutory requirements, was valid, as a common-law bond; that the same had been breached, and that the principal and sureties were liable to plaintiff thereon in the sum of $10,737.49 and costs. For that reason the judgment of the trial court is affirmed.

All the Justices concur, except KANE, C. J., and SHARP, J., who concur in the conclusion.