JONES *v.* HADFIELD.

4-4175

Opinion delivered February 17, 1936.

*Ed I. McKinley, Jr., T. H. Humphreys, Jr.,* and *Sam T. & Tom Poe,* for appellants.

*Horace Chamberlin, Donham & Fulk* and *Fred A. Donham,* for appellees.

BAKER, J. O. D. Hadfield was elected and served two terms as the city treasurer of the city of Little Rock. His second term expired April 10, 1933. G. L. Alexander was elected as his successor.

On the expiration of Hadfield's second term he failed to pay over to Alexander, his successor in office, $63,280.07, which belonged to the Firemen's Relief & Pension Fund, of Little Rock. This money had been deposited by Hadfield in the Peoples Trust Company and said company was upon a restricted basis from a time not made certain, but, at least, from March, 1933,

and upon that account was not able to pay all deposits in full.

Alexander, the newly-elected treasurer, made demand for this money, but took no step to make the collection or have it paid over to him as the successor of Hadfield. Peoples Trust Company was taken in charge by the banking department, and there was paid on May 2, 1933, $31,640.03, and later on June 22, 1934, $9,492.01, leaving a balance of $22,148.03 still owing by Hadfield to his successor in office.

To recover this last-mentioned sum or balance, a suit was filed against Hadfield, and against Fidelity & Deposit Company of Maryland, surety upon his bond, to require the payment of this sum of money, and, on account of the fact that the newly-elected treasurer would not join in this suit, the complaint showed that fact and named him as a defendant under the provisions of § 1097, C. & M. Digest.

In the circuit court there was a recovery against Hadfield for the balance due, with interest at 6 per cent. from the date of the judgment. The court found in favor of the Fidelity & Deposit Company of Maryland, and discharged it.

The appeal challenges the correctness of that judgment in that the appellants claim that judgment should have been rendered for interest at 6 per cent. from the date Hadfield retired from office, and that judgment should have been rendered against the surety upon his bond for the same amount.

The appellees tendered several defenses. One is that the two minor appellants showed no interest, such as would permit them to sue. It was contended also that the bond executed by Hadfield was at most only a common-law obligation, by the terms and conditions of which it merely was a guaranty of the honesty or integrity of Hadfield, a fidelity bond, and that there was an express saving or exemption from liability for any loss that might have been occasioned by the deposit of money in any banking institution.

We will attempt by our discussion to dispose of all these matters, not in the order named, for the reason that some of these matters have passed out of the case.

The first proposition we are to discuss is the one of proper parties plaintiff in the prosecution of the suit. Corine Jones and Arthur Jones were minor children of the former fireman who lost his life in the discharge of duty, and they claim they are the prospective recipients of relief from the funds sued for, but on account of the fact that the money was not paid over the relief has not been forthcoming, but has been denied to them. Appellees, however, agree that the city is a proper party. In fact they argue that it is the only proper party. Before the trial of this case, however, the statutory trustees, who have control of the disbursement of this fund, were all made parties to the suit, joining the two Jones children, adopting their pleadings to a large extent, and asking for recovery against Hadfield and surety upon this bond, which recovery meant, not that the Jones children, or any other plaintiff, would recover any money or be favored with the judgment for himself individually, but that such recovery as was had must be against the defendants to require restoration of this money to the particular fund in the custody of the city treasurer. There is no necessity of an elaborate discussion of this matter at this time. It could avail nothing to decide the now mooted question of the propriety of permitting the Jones children to maintain the suit. If these children have in fact no interest in the fund that matter will most probably be properly tested upon claims that they may make or present to the trustees after the funds shall have been collected and paid to the city treasurer. Bonds made by officials to the State or city may be sued upon by any one interested.

It is argued vigorously by the appellees that this is a public fund belonging to the city of Little Rock. Let it suffice to say that if it is such, it is one in which the city has a naked legal title with no beneficial interest whatever. It is true the treasurer is the proper custodian of this fund. That is not disputed by any party in interest, but the fund does not arise out of taxes, li-

cense fees and such other sources of revenue as are under the control of the city government, composed of the mayor and city council. No part of these funds may properly be used by the city government for any purpose whatever. The money creating this Firemen's Relief & Pension Fund arises out of the provisions of act No. 491 of the Acts of 1921. The same act provides for the payment of the money into the custody of the city treasurer, makes it his duty to receive the fund, and provides that his bond shall be liable therefor. Section 15 of act 491 of the Acts of 1921.

The said act also provides for a board of trustees, whose duties are defined by § 14. Any one interested in reading the aforesaid act, and considering the provisions thereof must be convinced at once that the real custodians of the fund are the trustees and the city treasurer. It is conceded the city had a right to sue; if so, it could recover only for the proper custodians. Hence, the question of proper parties plaintiff is no longer of importance, as all interested parties were properly before the court at the time of the trial.

The trustees sued for this money and, since the treasurer was not willing to become a party plaintiff, properly joined him as a defendant and any recovery accrues for the benefit of the fund, but under the statute, it must be held by the defendant, Alexander, as city treasurer, or his successor in office.

The bond executed by Hadfield, the city treasurer, had all of the usual incidents and provisions of the statutory bond. In fact, it was such, but to it was added the following provision:

"It is mutually understood and agreed between all parties hereto, that the said surety shall not be liable to said city of Little Rock, Arkansas, for any loss resulting to said city of Little Rock, Arkansas, by reason of any public moneys being now on general or special deposit or hereafter placed on general or special deposit by or on behalf of the said principal with any bank, depository, or depositories, or by reason of the allowance to or acceptance by said principal of any interest thereon, any law, decision or statute of the State of Arkansas, or or-

dinance of the said city of Little Rock, Arkansas, to the contrary notwithstanding;"

It is contended that the surety company was not compelled to execute a bond and that since it was willing to be sufficiently accommodating to make the bond for the treasurer, it had the right to say upon what conditions or provisions it would execute the instrument. The force of this argument must necessarily have an appeal to every fair-minded, thinking citizen. The right of freedom to contract is not one to be dealt with lightly nor to be thwarted by specious judicial construction. The record does not disclose the fact, if it be one, that the surety would not have executed this bond without having added to it the saving or exemption provision above noted. It is argued, however, that such is the fact and that the city had full knowledge and information in regard to the attitude of the surety upon the bond, and accepted the bond and thereby agreed to this exemption or saving paragraph.

We think appellants might well have conceded this proposition in the presentation of this case upon trial and appeal. Such concession would not have operated to release or discharge the surety.

According to our comprehension, governments are instituted for the benefit of the governed, and the primary purpose of all government and the creation of offices is for the protection of the citizen in all his rights. Under this theory, bonds are required of those handling public funds, not for the benefit of the office-holder in whose possession the funds are placed, but for the protection of the entire citizenship. It is a matter of public policy that security must be given as a condition precedent to a proper qualification for office and for the assumption of the responsibility thereof. The office-holder must yield obedience to the mandates of the law requiring him to give security. If he be unwilling or unable to do this, he cannot properly enter upon the office in the discharge of his duties. Act 491 of the Acts of 1921 takes cognizance of the fact that the city treasurer must have a bond. See § 15.

The ordinance is as follows:

"City officers—bonds of. All city officers hereinafter mentioned that may be now or hereafter elected or appointed, shall, before entering upon the discharge of their respective offices, each take the oath required by law, and give bond, with good security, for the faithful discharge of his office and duty, in the sum and amount as follows, to-wit: * * *; the city treasurer shall give such bond in the penal sum of $50,000; * * * All of the bonds provided for in this section shall be made by some reputable surety or bonding company and the annual premiums shall be paid by the city of Little Rock out of the general revenue fund. * * *. Ord. September 8, 1886." It is authorized by § 7517, C. & M. Digest. The city council of Little Rock had made due provisions for a bond by the ordinance copied above. The foregoing facts are taken from pleadings and agreed statement of facts. Other details will be set out in the discussion.

At the time Hadfield qualified for office the mayor, members of the city council, nor any one else had any right, power or authority to waive any provisions of the statute or ordinance then in force. We are not saying that the city council may not have made a different ordinance, nor are we saying that the Legislature may not have made a different provision, but there was no new ordinance and there was no new legislative act. This fact was known to the members of the council and also to Mr. Hadfield, and perhaps better known to the surety upon Mr. Hadfield's bond, because it attempted to contract against the effect of ordinances, statutes, and decisions of the courts contrary to the saving clause or exemption which is added to the bond. This it was powerless to do. City officers were powerless to consent thereto. The bonding company was without power to legislate by contract and bend the law so as to conform to its desire, nor did it have the power to recall judicial decisions and make them of no effect. The public policy which must govern is declared by statutes and ordinances. Officers who must make bonds do so because required by law. They and their sureties have as much right to ignore the law as they have to waive its salient and salutory provisions. No more.

Appellees insist the bond sued upon in this case is not a statutory bond, such as we have been discussing, but a common-law obligation. Even so, he and his surety contracted "to account for all money coming into his hands, according to law, etc." The interests of the public justify the enforcement of a common-law bond when it has been substituted for a statutory one. But even in a common-law bond, we cannot give effect to contractual provisions and limitations in contravention of statutes and ordinances. "To account for the money that came into his hands according to law" means that at the end of his term he would pay over the amount on hand to his successor. "He will faithfully perform all and singular the duties incumbent upon him" is the measure of the obligation, according to law, and neither one, he nor the surety, can contract, legally, to do less.

The bond under consideration in the case of *Fort Smith-Van Buren Bridge Dist.* v. *Johnson,* 181 Ark. 161, 25 S. W. (2d) 417, is a good example of an enforceable common-law obligation. By comparison of the language of the bond therein and the one under consideration here, the difference becomes obvious. The conditions in the Johnson bond were a part of it, but in the Hadfield bond the conditions are in conflict with its obligations. So if the added or questioned part of the bond sued upon be omitted as it must be as inconsistent with the kind of bond authorized and contemplated by law, then there remains the statutory bond.

Bonds made by officers are statutory bonds. Into them the statute is written. In other words, all of the conditions and stipulations are statutory. Whatever else may be added, by way of limitation or impairment, must be deemed surplusage. *Kansas City Southern Ry. Co.* v. *U. S. Fidelity & Guaranty Co.,* 174 Ark. 318, 325, 295 S. W. 705; *Phillip Cory Co.* v. *Maryland Casualty Co.,* 201 Ia. 1063, 206 N. W. 808, 47 A. L. R. 495; *Von Hoffman* v. *Quincy,* 4 Wall. 535, 18 L. Ed. 403; *Fogarty* v. *Davis,* 305 Mo. 288, 264 S. W. 879; *Duke* v. *National Surety Co.,* 131 Wash. 700, 230 Pac. 102; *Continental Life Ins. Co.* v. *Chamberlin,* 132 U. S. 304, 10 S. Ct. 87, 33 L. Ed. 341, 9 C. J. 35, 52 C. J. 1108, § 199; *Williamson* v. *Williams,* 262

Mich. 401, 247 N. W. 704, 89 A. L. R. 442, 443; *August* v. *Collins*, 260 Mich. 232, 244 N. W. 458; *Chambers* v. *Cline*, 60 W. Va. 588, 55 S. E. 999. Provisions in contravention of the statutes are void. *Southern Surety Co.* v. *Cochine Co.*, 27 Ariz. 473, 233 Pac. 897; *Davis* v. *West Louisiana Bank*, 155 La. 245, 99 So. 207.

Such provisions are surplusage. *Limestone Co.* v. *Montgomery*, 226 Ala. 266, 146 So. 607, 87 A. L. R. 164; *Leach* v. *Commercial Savings Bank*, 205 Iowa 975, 213 N. W. 612, 22 R. C. L. 497, § 177.

The foregoing propositions are supported so generally and by so many of the highest courts of the country as to admit no controversy as to their soundness. Both defendants became liable upon default, April 10, 1933, not for use of funds, or on account of embezzlement, or other shortage imputing culpable misapplication of funds. They are both insurers, the officer under the law, the surety by contract.

Judgment of trial court is reversed, and judgment is entered here for balance of principal, $22,148.03, and accrued interest at 6 per cent. till paid, with costs.

SMITH, McHANEY and BUTLER, JJ., dissent.

McHANEY, J. (dissenting). I respectfully dissent from so much of the opinion of the majority as holds the appellee, Fidelity & Deposit Company of Maryland, liable on its bond in this case. The condition of the bond is as follows: "Now therefore if the said principal shall well and faithfully perform all and singular the duties incumbent upon him by reason of his election or appointment as such treasurer of the city of Little Rock, Arkansas, except as hereinafter limited, and honestly account for all moneys coming into his hands as said treasurer of the city of Little Rock, Arkansas, according to law, then this obligation shall be null and void; it is otherwise to be and remain in full force and virtue.

"This bond is executed by the surety upon the following express condition, which shall be condition precedent to the right of recovery hereunder: It is mutually understood and agreed between all parties hereto that the said surety shall not be liable to said city of

Little Rock, Arkansas, for any loss resulting to said city of Little Rock, Arkansas, by reason of any public moneys being now on general or special deposit or hereafter placed on general or special deposit, by or on behalf of the said principal with any bank, depository, or depositories, or by reason of the allowance to or acceptance by said principal of any interest thereon, any law, decision, or statutes of the State of Arkansas, or ordinance of the said city of Little Rock, Arkansas, to the contrary notwithstanding.''

If the language, ''except as hereinafter limited,'' in the first paragraph above quoted, and that in the second and third paragraphs were omitted, then we would have a simple statutory bond. But the insertion of said language in the bond conclusively negatives the idea that the surety intended to give a statutory bond, or to be bound at all events. In clear and unambiguous language it contracted against liability for loss of funds on deposit in any bank. In *Union Indemnity Co.* v. *Covington,* 178 Ark. 533, 12 S. W. (2d) 884, in a suit on a contractor's bond given in the construction of a Masonic Temple at Russellville, we said: ''But we cannot construe the bond here sued on to be a statutory bond, when its obligations expressly negative that construction. This is not a case where the bond contains conflicting obligations; on the contrary, there is nothing in the bond to indicate that its protection inures to any one except the obligee, the Masonic lodge, and the recital is express that the surety shall be liable only to the obligee. We may construe contracts, but we have no right to make them, and we must therefore hold that the bond protects only the Masonic lodge, and the court was therefore in error in rendering judgment in favor of any of the interveners on the bond, and that judgment will be reversed and the interventions dismissed as to the surety company. *Wallace Equipment Co.* v. *Graves,* 132 Wash. 141, 231 Pac. 458; *Massachusetts Bonding & Ins. Co.* v. *Hoffman,* 34 Ga. App. 565, 130 S. E. 375. See also *City of Erie, to use of Schafer* v. *Diefendorf,* 278 Pa. 31, 122 Atl. 159.''

In *Fidelity & Deposit Company of Maryland* v. *Crane Co.,* 178 Ark. 676, 12 S. W. (2d) 872, in a suit on contractor's bond given in the construction of a building at the University of Arkansas, after reviewing a number of cases, from other jurisdictions as well as our own, the late Chief Justice HART, speaking for the court, said: "Therefore, we think it is more in accord with our previous decisions on the subject to hold that the statute does not prohibit the surety from executing a bond expressly restricting its liability to the obligee of the bond, where, as in this case, the bond does not contain any covenant showing that it was intended to be executed in obedience to the provisions of the statute, but, on the other hand, expressly negatives that idea."

It is true that the bonds construed in said cases are bonds of contractors, but they were required by statute, particularly in the latter case, and the statute, § 6913 of Crawford & Moses' Digest, "provides, in effect, that whenever any public officer shall, under the laws of this State, enter into a contract in any sum exceeding one hundred dollars with any person for the purpose of constructing any public building such officer shall take from the party contracted with a bond with surety as provided in the statute, and that the bond shall be conditioned that such contractor shall pay all indebtedness for labor and materials furnished in said building."

I can see no distinction between the statutory requirement in that case and in the case at bar. Section 7517, Crawford & Moses' Digest, provides that the city council may require from its officers a bond with good and sufficient security for the faithful discharge of their duties, and § 2832 provides that the treasurers of cities may deposit public funds in their custody in incorporated banks for safe keeping, and they and the sureties on their official bonds shall be liable. The question in this case is whether they shall be liable regardless of the provision of the bond that the surety will not be liable for money deposited in any bank. We think this court has answered this question, in the case of a public official, to the contrary in the case of *Fort Smith-Van Buren*

*Bridge District* v. *Johnson,* 181 Ark. 161, 25 S. W. (2d) 417. In that case, the bridge district sued its collector Johnson, and the surety on his official bond for an alleged shortage of $1,260.67. Before entering upon his duties as collector, he gave bond to the district, as he was required to do under the statute in the sum of $10,000. The statute required the collector to give bond "conditioned that they will faithfully discharge the duties of their office, and account for and pay over all moneys that come into their hands, according to law, and the order of the commission." He gave a bond conditioned as follows: "We, William Dewey Johnson, as principal, and the American Surety Company of New York, as surety, bind ourselves to pay Fort Smith & Van Buren Bridge District, Fort Smith, Arkansas, as obligee, such pecuniary loss, not exceeding ten thousand and no/100 dollars, as the latter shall have sustained of money or other personal property by any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, or willful misapplication on the part of the principal, directly or through connivance with others, while holding the position of collector in the service of the obligee."

Johnson and the bonding company defended on the ground that the shortage alleged was occasioned by the fact that said sum of money was stolen from his office, without his knowledge or consent and that the bonding company was not obligated under the terms of the bond for property stolen or wrongfully abstracted or willfully misapplied by third persons without knowledge or consent of Johnson and without his connivance. The bridge district contended that the provision of the statute above quoted should be read into the bond. In affirming the judgment in favor of Johnson and the bonding company this court said: "As far as the American Surety Company is concerned, the only important question presented for determination on this appeal, is whether the bond sued upon indemnified appellant against a loss or shortage in the account of its collector in any event, or whether the indemnity was restricted to a shortage or loss in his accounts due to a willful misapplication of the funds by

him. Appellant contends that the trial court erred in restricting the indemnity to the terms of the bond because the statute creating the district provided for a bond to be given by the collector, 'conditioned that they will faithfully discharge the duties of their office, and account for and pay over all moneys that come into their hands, according to law, and the order of the commission'; and that this condition shall be read into the bond, whether written therein or not. The doctrine relative to indemnity bonds in this State, as announced in the cases of *Union Indemnity Co.* v. *Covington,* 178 Ark. 533, 12 S. W. (2d) 884, and the *Fidelity & Deposit Company of Maryland* v. *Crane Company,* 178 Ark. 676, 12 S. W. (2d) 872, 874, is that where the statute requires the giving of such bonds the conditions contained in the statute will not be read into the bond, where 'the bond does not contain any covenant showing that it was intended to be executed in obedience to the provisions of the statute, but, on the other hand, expressly negatives that idea.' In the instant case the obligations in the bond expressly negative the idea that it was intended as a statutory bond. It would do violence to the language of the bond itself to construe it as a statutory bond, for the provisions of the bond negative any such construction.''

As I construe this case it is directly in point with the case at bar, and is an authority which must be overruled in order to hold appellee, Fidelity & Deposit Company of Maryland, liable in this case. Said appellee had all these cases before it in the preparation of its bond in the case at bar. It was the appellant in the Crane case, *supra.* It had a right to rely and did rely upon the authority in these cases in writing its bond in this case. To change this ruling now and hold said appellee liable would, in my opinion, violate the obligation of said appellee's contract contrary to the Constitution of the United States and of this State. As said by Judge HART in the Crane case, *supra:* ''The decision of the court in that case is in accord with our holding in the Covington case above cited. It is also in accord with the spirit of the decision in *Reiff* v. *Redfield School Board,* 126 Ark.

474, 191 S. W. 16. In that case the court held that, in the case of a bond given by a contractor to secure school directors, who were held to be public officers, the bond was executed pursuant to the statute and in obedience to it, and with the intention of complying with its terms, it was a statutory bond, although it did not strictly follow the provisions of the statute. If the court had meant to hold that our statute impliedly prohibits the execution of any bond by public contractors except in obedience to the terms of the statute, the court should have declared such to be the legislative public policy in that case and have rested its decision on the ground that any bond executed by public contractors should be deemed to have been executed in obedience to the statute, and that the parties should have been conclusively presumed to have intended the bond to be a bond executed in obedience to the statute.''

If we had held in all these cases, as suggested by Judge HART, that such a bond was executed pursuant to the statute and in obedience to it, and that the statute impliedly prohibits the execution of any bond except in obedience to the terms of the statute, then appellee would have no room to complain. But since we have held expressly to the contrary, both as to contractors' bonds and official bonds, we should not now change the rule and subject said appellee to a penalty which was specifically exempted from the bond, under the authority of our own decisions. I therefore dissent, and I am authorized to say that Mr. Justice SMITH and Mr. Justice BUTLER concur in the views herein expressed.

JOHNSON, C. J., (on rehearing). The importance of the legal questions involved and the earnestness of counsel in presenting them on motion for rehearing has necessitated a review and reconsideration of a vast array of legal authority with consequent delay in final determination. From consideration of the majority opinion it will be seen that the legal questions involved may and should be divided as follows: First, is the bond executed by appellee fidelity company a statutory or common-law obligation? Second, if statutory, should that portion of

the bond in excess of the statute be treated as surplusage? The city ordinance under which the bond was executed is set out in the original opinion and need not be repeated here. The bond executed by appellant surety and upon which this suit is predicated is as follows:

"FIDELITY AND DEPOSIT COMPANY OF MARYLAND
"Home Office, Baltimore, Maryland
"Amount $50,000                          No........................

"KNOW ALL MEN BY THESE PRESENTS, That O. D. Hadfield, Little Rock, Arkansas, as principal (hereinafter called 'principal'), and the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation of the State of Maryland, having its principal office in the city of Baltimore, Maryland, as surety (hereinafter called 'surety'), are held firmly bound into the

"City of Little Rock, Arkansas,

in the penalty of FIFTY THOUSAND AND No/100 ($50,000) Dollars, to the payment whereof, well and truly to be made and done, the said principal binds himself, his heirs, executors and administrators, and the said surety binds itself, its successors and assigns, jointly and severally, firmly by these presents;

"Signed, sealed and dated this 31st day of March, A. D., Nineteen Hundred and Thirty-one.

"The condition of the aforegoing obligation is such, that

"Whereas, the said principal was elected or appointed treasurer of the city of Little Rock, Arkansas, for the term beginning April 13, 1931, and ending April 13, 1933.

"Now, therefore, if the said principal shall well and faithfully perform all and singular the duties incumbent upon him by reason of his election or appointment as such treasurer of the city of Little Rock, Arkansas, except as hereinafter limited, and honestly account for all moneys coming into his hands as said treasurer of the city of Little Rock, Arkansas, according to law, then this obligation shall be null and void; it is otherwise to be and remain in full force and virtue.

"This bond is executed by the surety upon the following express condition, which shall be condition precedent to the right of recovery hereunder:

"It is mutually understood and agreed between all parties hereto, that the said surety shall not be liable to said city of Little Rock, Arkansas, for any loss resulting to said city of Little Rock, Arkansas, by reason of any public moneys being now on general or special deposit or hereafter placed on general or special deposit by or on behalf of the said principal with any bank, depository, or depositories, or by reason of the allowance to or acceptance by said principal of any interest thereon, any law, decision, or statute of the State of Arkansas, or ordinance of said city of Little Rock, Arkansas, to the contrary notwithstanding.

"In testimony whereof, the said principal has hereunto set his hand and seal, and the said surety has caused this instrument of writing to be signed by its duly appointed attorney-in-fact and its corporate seal to be hereunto affixed, the day and year first above written.

"O. L. Hadfield (Seal)

"Fidelity and Deposit Company of Maryland,

"Henry Simpson, Attorney-in-fact,

"Witness."

The bond reflects that Hadfield has been duly elected or appointed as treasurer of Little Rock for the term beginning April 13, 1931, and ending April 13, 1933; the exact penalty required of the city treasurer by the city ordinance is likewise recited and provided for in the bond; and the bond expressly provides that "said principal shall well and faithfully perform all and singular the duties incumbent upon him by reason of his election or appointment as such treasurer of the city of Little Rock, etc.;" other covenants of the bond appear to have been made in strict compliance with the ordinance. A mere casual reading of the bond down to the point of exemption must convince any one that the contracting parties had in mind strict compliance with the city ordinance and the execution of a bond in conformity thereto. Does the exemption clause contained in the bond compel

240

the conclusion that it was not the intent of the contracting parties to execute a statutory bond? The exemption clause of the bond is the only basis for the contention that the bond is a common-law obligation. It is not claimed that the city officials who participated in the execution and acceptance of the bond had any power or authority by city ordinance to receive. or accept any bond of the city treasurer other than the bond provided for in the ordinance. Indeed it is and must be conceded that but one kind of bond is authorized by the statutes of this State and the ordinances of Little Rock promulgated thereunder for the city treasurer, namely; one guaranteeing the faithful discharge of official duties and pay over to his successor in office all trust funds that come into his hands. Was this or some other kind of a bond executed? It is a fundamental rule of law that the surety company well knew at the time of the execution of the bond what the law required, but yet they elected to execute a bond which had all the ear-marks and characteristics of a statutory bond with an unauthorized exemption clause. This unauthorized exemption falls within the well-recognized rule that sureties upon an official bond by virtue of which the official has been inducted into office, cannot when called upon to answer for the official's neglect of duty escape liability upon the theory that the principal was not duly elected, appointed or qualified as such. See Meechem, Public Officials, § 314; 2 Brandt, Suretyship and Guaranty, § 521; *State* v. *Bates,* 36 Vt. 387; *People* v. *Evans,* 29 Cal. 429; *Byrne* v. *State,* 50 Miss. 688; *Taylor* v. *State,* 51 Miss. 79; *Buhrer* v. *Baldwin,* 137 Mich. 263, 100 N. W. 468; *Board of Com. of Hennepin County* v. *State Bank,* 64 Minn. 180, 66 N. W. 143; *Henry County* v. *Salmon,* 201 Mo. 136, 100 S. W. 20. The city authorities being without power or authority to receive or accept a city treasurer's bond other than one conforming to and complying with the ordinance in this respect it follows that the bond in the instant case is a statutory bond or is no binding obligation whatever.

Is the bond a nullity because of the . unauthorized exemption clause? In *Trustees of Bath* v. *McBride,* 142

N. Y. S. 1014, the court held that where the form of the statutory bond differed from that prescribed by the statute, if founded upon a good consideration, the liability of the surety should be determined by the statute instead of the language of the obligation itself. In *Western Casualty and Guaranty Insurance Company* v. *Board of Commissioners,* 60 Okla. 140, 159 Pac. 655, the Supreme Court of Oklahoma stated the applicable rule, reading from the second headnote as follows: "Where the depositary bond executed pursuant to the provisions of said § 1540 contains the exact conditions imposed by the statute and in addition other conditions which are not provided by the statute, tending to limit or evade liability, the bond will be upheld as to the conditions imposed by statute, and the other provisions will be treated as surplusage."

Many of the cases cited in the original opinion are to the same effect as those just cited and quoted from and need not be restated here. It must suffice to say that it is generally held that an official bond that contains the exact requirements of the statute under which it is executed and is followed by other provisions not required or recognized by the statute that such bond is nevertheless a statutory bond and the provisions of the bond not in accord with the statute should be treated as surplusage. But it is contended by petitioners that the view here and in the original opinion expressed are in conflict with the opinions in *Union Indemnity Co.* v. *Covington,* 178 Ark. 533, 12 S. W. (2d) 884; *Fidelity & Deposit Co.* v. *Crane Co.,* 178 Ark. 676, 12 S. W. (2d) 872, and *Ft. Smith-Van Buren Bridge District* v. *Johnson,* 181 Ark. 161, 25 S. W. (2d) 417, upon which it relied and in reference to which it contracted.

These cases afford but little support to petitioner's position when properly analyzed. In the first place each of the bonds considered in the cases referred to were patently common-law obligations, made so by the express terms thereof, and we expressly so decided. The bond in the Covington case was entered into between a building committee of a Masonic Lodge, a contractor and a surety

company and guaranteed performance of the contract by the contractor. No element of general public interest in the bond was involved; therefore, the case is no authority here. In the Crane Company case this court expressly found that the surety bond there considered contained no "covenants showing that it was intended to be executed in obedience to the provisions of the statute but expressly negatived that idea." See syllabus, 178 Ark. 676, 12 S. W. (2d) 872. The bond in the Johnson case by its express terms only indemnified against "fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or willful misappropriation of the district's funds; therefore, it contained no covenant or covenants indicating that the bond was executed in compliance with the statute or by its authority. Moreover, the improvement district involved is not sovereign and under the Constitution and law of this State has none of the attributes of sovereignty. This will suffice as we believe, to show that the cases referred to are not controlling here. In the second place, the bonds considered in the cases referred to are merely private contracts as distinguished from official statutory bonds or obligations and the same rule of construction and application does not apply. This distinction has been expressly recognized by this court in *Little Rock Railway & Electric Co.* v. *North Little Rock,* 76 Ark. 48, 88 S. W. 1026. The distinction has likewise been recognized by the Supreme Court of the United States; see *Hunter* v. *Pittsburgh,* 207 U. S. 161, 28 S. Ct. 40; *City of Trenton* v. *New Jersey,* 262 U. S. 182, 43 S. Ct. 534, 67 L. Ed. 937.

Petitioner cites, and relies with confidence, upon the cases of *City of Sedalia, etc.,* v. *American Surety Co.,* 82 Fed. 112. The covenants of the bond there considered were restricted by its terms to "Fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or willful misappropriation on the part of the principal." This is exactly the obligations we considered in the Johnson case, *supra,* and the Circuit Court of Appeals reached the identical conclusion reached by us in the Johnson case; therefore, we have no quarrel with the opinion.

Opinions from other jurisdictions, notably South Dakota, are pressed upon us, but it must suffice to say that each of them may be differentiated either upon the facts or the fundamental law under which the contracts were executed.

Petitioners also contend that if we adhere to our original opinion its effect is to impair the right to contract as vouchsafed by the 14th Amendment to the Federal Constitution, and a great array of authority is cited in support of this contention. We do not pause to discuss in detail the authorities cited because as we perceive they have no application to the facts of this case. It is a fundamental rule of law that the right of the sovereign power to direct that which is for the welfare of the general public cannot be abridged or contracted away by individuals. See 6 R. C. L. 706, and cases there cited. There is uniformity of opinion to the effect that contracts contrary to, or in violation of the Constitution or statutes of a State, are not enforceable. See 13 C. J., p. 255, and cases there cited; also, see *Augusta Bank* v. *Earle,* 13 Pet. 519, 10 L. Ed. 274; *Ogden* v. *Saunders,* 12 Wheat. 213, 6 L. Ed. 606. Such being the law and we having determined that petitioner's bond is and was intended to be by the parties, a statutory one it follows that the striking down of a conflicting clause incorporated therein contrary to the statute does not infringe upon the rights of the parties to contract as vouchsafed by the 14th Amendment.

To us the law seems to be clear that when a sovereign, or the representative thereof, contracts with a principal and his surety in respect to his official duties as a receiver of public funds and a bond be executed employing all the covenants required by the statute but containing a clause of exemption from liability not recognized by such statute, such bond should be treated as a statutory one and the exemption, being in excess of the statute, treated as surplusage. The rule as thus formulated and stated not only conforms to the great weight of American authority on the subject but comports with sound reason and logic.

Sovereign States and their subdivisions can act only through duly authorized and constituted agents. Taxes are an absolute necessity to a sovereign State's endurance and operation. The sovereign will and mandate must be adhered to, else by dishonesty or malfeasance of public officials the sovereign may be destroyed. In the instant case if the city officials, admittedly without statutory authority, can contract away the city treasurer's and his surety's liability in respect to bank deposits they may likewise dispense with the necessity for any bond or surety, thereby imperiling the very existence of the sovereign. Such is not the law or the announced public policy of this State, and we believe such construction would be a departure from established precedents, logic and reason. This was the original view, and after the most deliberate consideration we adhere to it.

The motion for rehearing will be denied.

SMITH, McHANEY and BUTLER, JJ., dissent.