# Fidelity and Deposit Co. of Maryland *v*. Phillips, Appellant.

*Principal and surety—Several bonds—Contribution.*

1. The fact that there are two or more bonds instead of one, but all conditioned to be answerable for one general purpose, does not affect the primary liability of the sureties on each bond. While the bonds remain in force the cestuis que trustent may elect to proceed against the sureties on either bond, and if a surety on either bond is compelled to pay the entire amount of the default, he may proceed against his co-sureties on all the bonds remaining in force, for contribution.

2. Where a bond is entered by a trustee in the orphans' court and thereafter a second bond is entered as additional security, and the sureties on the old bond do not ask for their discharge, they will continue liable on their bond; and if the sureties on the second bond are compelled to pay a loss, the sureties on the first bond will be liable to contribution.

3. Where one of two sureties on the first of two successive bonds of a trustee, consents to an improper investment, and a loss results, such consenting surety is liable although his non-consenting surety may be discharged; and if the sureties on the second bond have been compelled to pay the loss, the consenting surety on the first bond will be liable to contributions to the full measure of his liability on his own bond.

4. Where sureties are bound by different sums in different instruments, they are liable in proportion to the penal sums in the respective bonds.

Argued Feb. 8, 1912. Appeal No. 203, Jan. T., 1911, by defendant from decree of C. P. Chester Co., No. 512, in equity, in case of Fidelity & Deposit Company of Maryland v. Lewis Phillips and Sarah C. Massey and Joseph W. Hawley, Executors of Isaac Massey, deceased. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity for contribution.

HEMPHILL, P. J., found the facts to be as follows:

This is a bill to compel pro rata contribution by the defendants, who, the plaintiff alleges, were co-sureties with it for a defaulting trustee and whose default has been paid in full by it alone, under the following facts and circumstances.

On August 12, 1889, John A. Rupert was appointed by the orphans' court of this county, trustee of Helen H. Holmes, in place of Samuel Dutton, deceased, who had been the sole surviving trustee of the said Helen H. Holmes under the will of her father, Daniel B. Hinman, deceased; and received from the legal representatives of the said Dutton the trust fund of $12,017.12, first having given bond for the faithful performance of his duties, as trustee in the sum of $24,100 with Isaac Massey and Lewis Phillips as sureties, which bond was joint and not several and was approved by said court. The investments received by Mr. Rupert bore the rate of interest then current here, and for that reason were unsatisfactory to the cestuis que trustent, Mrs. Holmes and her daughter, Juliet C. Johnson (to whom the principal passed upon the death of her mother), who were desirous for an increase of income. Soon after Mr. Rupert's appointment, he was visited by Mr. Holmes, the husband and father of the cestuis que trustent, with the view of having him invest the trust funds in securities bearing a higher rate of interest.

In company with Dr. Isaac Massey, who was a son-in-law of the late Daniel B. Hinman, and brother-in-law of Mr. Holmes, both having married daughters of said Hinman, Mr. Rupert took Mr. Holmes to the office of his counsel, Mr. Hause, where the propriety and desirability of the change was discussed.

Mr. Hause said he would not advise his client to make such investments, unless authorized by the cestuis que trustent so to do, in writing and agreeing to relieve him and his sureties from all losses by reason of such change, save only "for losses happening by gross negligence on

the part of said trustee." Such an agreement was sub-
sequently prepared by Mr. Hause and executed by the
cestuis que trustent, in the latter part of September,
1889, and returned to Mr. Rupert, who thereupon
changed the investments to those bearing a higher rate
of interest, mainly Kansas mortgages.

At this meeting Mr. Holmes expressed himself as
anxious to have the funds invested in a Massachusetts
corporation, called the Weimer Company or the Weimer
Investment Company, in which he was interested. But
Dr. Massey thought such an investment unwise and sug-
gested that the funds could be invested in western securi-
ties, that in his judgment were entirely safe.

Dr. Massey and Mr. Rupert were intimate friends; he
was instrumental in securing him as trustee; made in-
vestments, in western securities for himself and for his
father through him; visited his office "frequently two or
three times a week;" knew of the agreement and so upon
its receipt from the cestuis que trustent Mr. Rupert
called upon him at his home and told him he "could not
consent to invest the fund in the Weimer Investment
Company bonds," and why—and that he "proposed to in-
vest moneys in Kansas mortgages, negotiated by the
Kansas Investment Company, under the management
then of C. N. Beale, of Topeka, Kansas." To this the Dr.
neither dissented or approved—he made no comment
at all.

On May 24, 1899, Mr. Rupert filed his first account,
which not being excepted to was duly confirmed.

Dr. Isaac Massey died January 31, 1899, and in the
latter part of that year Mr. Rupert was requested by
counsel to give an additional bond or security, which he
complied with by filing on January 29, 1900, a bond of
the plaintiff company in the sum of $15,000.

On November 6, 1903, a second account was filed by
the trustee, to which exceptions were filed resulting in a
surcharge and a finding, that there was due from the
trustee to the cestuis que trustent the sum of $12,017.12.

Mr. Rupert having become insolvent, the orphans' court on February 26, 1906, upon petition, dismissed him and appointed Benjamin W. Haines trustees in his place.

The new trustee then brought suit upon the bond of the plaintiff company, which resulted on February 17, 1908, in a verdict for the plaintiff for $14,279.89, upon which judgment was duly entered and upon appeal was affirmed by the Supreme Court. (See Com. v. Fidelity & Deposit Co., 224 Pa. 95.)

On April 12, 1909, the defendant company (the plaintiff here) paid the judgment with interest and costs, amounting in all to $15,325.00 and on May 13, 1909, filed this bill for contribution.

There is no evidence that the defendant, Lewis Phillips, who has died since the filing of this bill, ever saw or knew of the existence of the agreement of September, 1889.

The court decreed: "That Sarah C. Massey and Joseph W. Hawley, executors of Isaac Massey, deceased, contribute, reimburse and pay over unto the plaintiff, Fidelity and Deposit Company of Maryland, 24100-39100 of $14,279.89, being the sum of $8,801.67, with interest thereon to be computed from February 18, 1908, amounting (on December 14, 1910, the date of the decree) to the sum of $10,291.56, and that they pay the costs of this proceeding."

*Error assigned* was the decree of the court.

*S. D. Ramsey* and *E. H. Hall,* for appellants.—The appellants were discharged by the agreement between the cestuis que trustent and the trustee: Bensinger v. Wren, 100 Pa. 500; Nesbit v. Turner, 155 Pa. 429; Bauschard v. Fidelity & Casualty Co., 21 Pa. Superior Ct. 370; North American Land Co.'s Estate, 60 Pa. 247; Hibbs v. Rue, 4 Pa. 348; Brez v. Warner, 9 W. N. C. 45; Shackamaxon Bank v. Yard, 150 Pa. 351; Rutter v. Hall, 31 Ill., App. 647.

The surety is a favorite in law and all intentments must be resolved in his favor: Young v. American Bonding Co., 228 Pa. 373; North American Land Co.'s Estate, 60 Pa. 247; Bensinger v. Wren, 100 Pa. 500.

In an action for contribution between sureties, any defense can be made that would have availed against the creditor: Baily's Estate, 156 Pa. 634; Lowndes v. Pinckney, 1 Richardson Eq. (S. C.) 155.

If there are several sureties liable for the same debt, and the creditor releases one of them from liability and does not thereby materially alter the contract, he releases the remaining surety to the extent that such released surety would otherwise have been liable to contribute to his co-surety: Mortland v. Himes, 8 Pa. 265; Schock v. Miller, 10 Pa. 401; Klingensmith v. Klingensmith, 31 Pa. 460.

*Wm. A. Glasgow, Jr.,* with him *John H. Hall* and *Cornwell & Cornwell,* for appellee.—The consenting surety, Dr. Isaac Massey, was not discharged from liability, per se, by the fact that his co-surety, Mr. Lewis Phillips, was discharged: Swanzey v. Parker, 50 Pa. 441; Schock v. Miller, 10 Pa. 401; Cox v. Detwiler, 1 W. N. C. 94; Holt v. Bodey, 18 Pa. 207; Talmage v. Burlingame, 9 Pa. 21; Weist v. Jacoby, 62 Pa. 110.

The right of contribution exists between the two bonds filed in the Orphans' Court: Com. v. Cox, 36 Pa. 442; Com. v. Fidelity & Dep. Co., 224 Pa. 95; Com. v. Transue, 2 North. County 313; Com. v. Risdom, 8 Phila. 23; Newcomer's App., 43 Pa. 43; Com. v. Rogers, 53 Pa. 470; White v. Com., 39 Pa. 167; Bownman v. Kistler, 33 Pa. 106; Busch's Est., 12 Phila. 53.

The loss resulting from the surcharge against the trustee, John A. Rupert, should be apportioned between the two bonds filed by him according to the amounts of the respective penalties named in such bonds: Deering v. Winchelsea, 2 Bos. & Pul. 270; Craythorne v. Swinburne, 14 Ves. Jr. 160; Loring v. Bacon, 57 Mass. 465;

Bell v. Jasper, 37 N. C. 597; Jones v. Hays, 38 N. C. 502; Jones v. Blanton, 41 N. C. 115; Moore v. Boudinot, 64 N. C. 190; Moore v. Hanscom, 103 S. W. Repr. (Tex.) 665.

The full share of the surcharge apportionable to the first bond filed by Dr. Massey and Mr. Phillips, should be borne by the surety remaining liable on said bond: Wolf v. Fink, 1 Pa. 435; Burson v. Kincaid, 3 P. & W. 57; Boughton v. Bank of Orleans, 2 Barb. Ch. (N. Y.) 458.

OPINION BY MR. JUSTICE ELKIN, March 18, 1912:

In Com. v. Fidelity & Deposit Co., 224 Pa. 95, the judgment entered by the court below against the bonding company, appellant there and appellee here, was affirmed. The result of that judgment was to charge the bonding company with the entire default of the trustee, amounting at that time to $14,279.89. The appellee bonding company then brought this suit for contribution against the sureties on a former bond given by the same trustee to insure the faithful discharge of his duties and to secure a proper accounting of the trust funds. Unless the sureties on the former bond were discharged their liability to answer for the default of the trustee to those interested in the trust estate still continues, and it follows as a legal consequence, if there was a separate bond taken as an additional security, and the surety on the additional bond, paid the loss resulting from the default, the surety thus required to make good the default, may proceed against the sureties not discharged for contribution. The fact that there are two or more bonds instead of one, but all conditioned to be answerable for one general purpose, does not affect the primary liability of the sureties on each bond. While the bonds remain in force the cestuis que trustent may elect to proceed against the sureties on either bond, and if a surety on either bond is compelled to pay the entire amount of the default, he may proceed against his co-

sureties on the same bond, or the sureties on all the bonds remaining in force, for contribution. This rule of law is of such universal application as to make it unnecessary to cite authorities in support of it. The only question that could arise on this branch of the present case is whether the first bond still remained in force after the taking of the new bond. The learned court below held that both bonds remained in force, and this court is of the same opinion. There were two sureties on the original bond which was executed in 1889. Ten years later one of the sureties died, whereupon the cestuis que trustent through their counsel requested the trustee to give additional security. Neither the surviving surety nor the representatives of the deceased surety did anything by way of asking to be relieved from liability on the original bond, nor did they ask for additional security. The original bond as filed and approved by the court remains unchanged and is of record in the Orphans' Court of Chester county. No petition was presented, nor was any request made by the sureties, nor by anyone else, when the new bond was taken, asking for a discharge of the sureties on the original bond. Indeed, the record and the facts show what the learned court below assumed as the basis of its findings, that the new bond was demanded and given as an additional security and not as a substitution for the original bond. There was no express discharge by order of court; and, certainly, under the facts and the rule of our cases such a discharge did not result by operation of law. We conclude, therefore, that both bonds continued in force and the liability of the sureties on the first bond was not discharged by taking the new bond.

It is further contended that the sureties on the first bond were discharged because the trustee and the cestuis que trustent entered into an agreement authorizing the investment of the trust fund in western mortgages without their knowledge or consent. The learned court below found as a fact, that one of the sureties advised this

investment to be made, and must therefore be held to have given his consent, but as to the other surety, the evidence did not show, that he had any knowledge of such an investment being made, or that he had consented to such a disposition of the trust fund. The consenting surety was held bound according to his original undertaking, while the non-consenting surety was said to be discharged from all liability. There is a suggestion that the court may have erred in holding the one surety to be discharged, but no exception was taken, and as the point is not assigned for error, the question cannot be considered here.

It is strongly urged by counsel for appellants that the learned court below was not warranted in finding that Dr. Massey had consented to the investment of the trust fund in the securities from which the loss resulted. Any other finding would have disregarded the established facts and the plain inferences to be drawn therefrom. No other conclusion could have been reached without doing violence to the facts. It is further suggested that the discharge of the non-consenting surety had the legal effect of discharging the consenting co-surety. This position is without merit. As far back as Wolf v. Fink, 1 Pa. 435, it was decided, that where a second note was given in satisfaction of a first note, all parties to the first note were discharged, and the remedy is on the second; but if time only is given on the first note, and one of the joint sureties thereon assented, and the other surety dissented, in a suit on the first note, an award in favor of the dissenting surety, unappealed from, does not operate as a discharge of the consenting surety and the maker. It has been frequently held that a plaintiff in a joint action against several parties may enter a nolle prosequi as to a defendant pleading matters personal to himself, and still recover in the same action against the other defendants. To this class of cases belongs that of a surety who seeks and obtains a discharge in equity by the conduct of the creditor. In such a case a judgment

in favor of one surety so discharged from liability, does not operate to discharge a co-surety who is not in position to avail himself of a like defense personal to himself. See Schock v. Miller, 10 Pa. 401; Holt v. Bodey, 18 Pa. 207; Swanzey v. Parker, 50 Pa. 441; Weist v. Jacoby, 62 Pa. 110.

In the case at bar the consenting surety on the first bond is bound to make contribution to the surety on the second bond in proportion to the extent of their respective undertakings and the extent of that liability is the only remaining question to be considered here. If suit had been brought on the first bond, instead of the second, each of the original sureties would have been liable for the entire default, but could have called upon his co-surety for his share of the loss. But if one surety consented, and the other dissented, there would be no liability on the dissenting surety and the whole burden would fall upon the consenting surety. The consenting surety cannot escape the full measure of his liability upon the ground that his co-surety did not join in giving his consent. If, therefore, a judgment had been obtained against Dr. Massey, the consenting surety on the original bond, for the full amount of the default, he could only have claimed contribution from the sureties remaining bound. The rule must necessarily work both ways, and inasmuch as judgment here was obtained for the full amount of the default against the surety on the second bond, that surety has the right to demand contribution in proportion to the liability imposed upon the sureties on the first bond according to their several undertakings. The liability of each surety in the several undertakings is measured by the penal sum in the respective bonds. This is the settled rule of the English cases, and it has been approved and followed by most American courts: Deering v. Winchelsea, 2 Bos. & Pul. 270; Craythorne v. Swinburne, 14 Ves. Jr. 160; Loring v. Bacon, 57 Mass. 465; Bell v. Jasper, 37 N. C. 597; Moore v. Hanscom, 103 S. W. Rep. 665. The rule seems

to be that if the sureties signed the same instrument
there would be equal contribution among them, but
where the sureties are bound by different sums in dif-
ferent instruments, they are liable in the proportion of
the amounts of the obligations signed by them respec-
tively. This court very recently considered the question
in Malone v. Stewart, in an opinion not yet reported,
in which it was held that the liability of the sureties
to contribute was in proportion to the penal sums in the
respective bonds. In fixing the liability of the consent-
ing surety in the present case this rule was followed by
the learned court below and we think properly so.

Decree affirmed.