103 P.2d 628

## FIDELITY & DEPOSIT CO. OF MARYLAND v. RICHARD.

### No. 4533.

Supreme Court of New Mexico.

May 29, 1940.

George A. Shipley and Lorna M. Shipley, both of Alamogordo, and John E. Hall, of Carrizozo, for appellant.

Botts & Botts, of Albuquerque, for appellee.

BICKLEY, Chief Justice.

Suit was brought in the district court by plaintiff-appellee, surety on a public money depository bond of the Lincoln State Bank of Carrizozo, in favor of the County of Lincoln, against defendant-appellant, F. E. Richard, one of the sureties upon another and additional bond, subsequently executed, for the purpose of requiring contribution from the second sureties.

A judgment was rendered by the trial court in favor of the plaintiff-appellee and against the defendants. From this judgment one defendant, F. E. Richard, appeals to this court. The question thus presented is that of whether, under the circumstances, contribution should have been decreed.

The case was tried to the court without a jury and upon a stipulation of facts. We do not find it necessary to quote in full the

stipulation. The salient features thereof, as they affect this appeal, are as follows:

The Lincoln State Bank, hereafter to be referred to as the bank, was a depository of the public moneys of Lincoln County, and appellee, hereafter to be referred to as the Surety Company, was surety for the bank for the protection and security of funds of said county, in the amount of $10,-000.

An anticipated deposit of County funds in the bank, in an amount beyond the $10,-000 for which the surety depository bond had already been given, required this additional bond or security. Appellant Richard and another were induced to sign such a new and additional surety bond upon the representation and with the understanding as between Richard and the bank, and the County Commissioners of Lincoln County, that this additional bond to be so given was to secure only such county deposits in the bank as would, at any time, be in excess of $10,000; and, for any loss that might be occasioned, the said appellant would be liable only for such excess amount which should be on deposit at the time of loss.

The bank thereafter failed, but with less than $10,000 of said county funds on deposit. Demand was made upon the surety company and it eventually paid the claim in an amount less than $4,000. It is for a pro rata contribution of the amount of this judgment, plus an additional amount incurred by the surety company as expenses in litigating the claim with the county, which brought on this suit.

Some question arises here over the interpretation to be placed upon the stipulation of facts upon which the case was tried, as to whether it supports the surety company's view that there was in fact no agreement that appellant's bond should be so limited as to liability. That point, we think, is without merit, however. The stipulation rather fairly and clearly supports appellant's view that there was, as between the bank, the county authorities and appellant (and his co-surety), an agreement and understanding that liability on the second bond would be limited to coverage of deposits only in excess of $10,-000, as aforesaid. The surety company did not know that there was a second bond. It was not a party to the "agreement", of course.

The important question presented then, is not whether there was such an agreement to limit the liability of the second bond, but whether the parties could, in fact, make an agreement to so limit liability. This becomes now the one question in the case.

Both bonds, that of the surety company as well as that given by the appellee, were statutory bonds, substantially in the statutory form as provided by Chap. 76, Laws of 1923, as amended by Laws of 1925, Ch. 123, Sec. 112-108, N.M.Comp.Laws 1929. Section 8 of this act prescribes that the condition of the bond shall be that the principal shall render monthly statements showing in detail "the daily balance of said moneys, so held by said principal on deposit, and the amount of interest accrued thereon, for the last preceding month, and

shall pay over said deposit and said interest, upon the check, order or demand in writing of the officer thereunto duly authorized," and shall calculate and pay interest, "and shall in all respects save and keep the said ............... safe and harmless by reason of the making of said deposit or deposits, and shall generally do and perform each and everything required of depositories of public funds to be done and performed" by the provisions of a certain Act of the State of New Mexico, entitled, etc. By the same section, it is provided that no public moneys "shall be deposited in any bank * * * until such bank is qualified to receive deposits of public moneys by depositing collateral security or by giving bond as provided by this Act."

Appellee surety company urges that, since the purpose of giving the bond under consideration was to qualify the principal, Lincoln State Bank, as a depository of public money, and since the Act provides qualification of a depository only by the giving of such a bond as is thereby required, and, since the Act provides that such bond be conditioned for the periodical accounting for "the daily balance of said moneys, so held by said principal on depost", and for the payment over of "said deposit and said interest, upon the check, order or demand in writing of the officer thereunto duly authorized," and since it does not provide for qualification of a depository by the giving of a bond limited to an accounting for and payment of any deposit in an amount less than the whole,

therefore, any such agreement so attempting to limit the liability on the bond would not be enforceable.

The bond under consideration, under its terms as written and under the requirements of the statute, was for the payment, on demand, of the entire deposit, limited only by the amount of the penalty of the bond, just as was the earlier bond of the appellee, and, therefore, both bonds were for the same indebtedness and created a common liability, appellee claims. The sureties on the two bonds were co-sureties and in duty bound to contribute, unless we can say the agreement to limit liability is valid. We need not stop to consider what would have been the effect of the oral agreement so limiting liability, if the bonds here under consideration had been merely common law obligations unaffected by any statutory requirement. The common law rule may be distinguished. The authorities relied upon by appellant do not afford much aid.

In the case of Leach v. Commercial Savings Bank, 205 Iowa 975, 213 N.W. 612, 615, are to be found facts somewhat similar to those here presented. The court there held that the bond was given in pursuance of the statute, and that the statute thus becomes a part of, and must be read into, the bond.

We find the court in this case presented with facts much like those we are now considering; using language running through many authorities there cited and upon which appellee relies. "The terms and pro-

visions of the statute are read into the bond, and a construction of the statute is a construction of the bond," the Iowa court there said. "Appellants intended to execute a statutory bond, and were bound to know that, when executed, it became binding upon them until terminated by law and in the manner provided. The purpose and character of the bond required of a depositary of public funds having been prescribed by the Legislature, its requirements must be complied with," that court further commented.

The general rule may be said to be that the statute, in pursuance of which a bond, such as this, is given, is read into the bond and the parties cannot by contract or otherwise limit the statutory obligation. Lawrence v. American Surety Co., 263 Mich. 586, 249 N.W. 3, 88 A.L.R. 535; United States F. & G. Co. v. Poetker, 180 Ind. 255, 102 N.E. 372, L.R.A.1917B, 984; Jones et al. v. Hadfield et al., 192 Ark. 224, 96 S.W.2d 959, 109 A.L.R. 488; Fogarty v. Davis, 305 Mo. 288, 264 S.W. 879; Southern Surety Co. v. Cochise County, 27 Ariz. 473, 233 P. 897.

It was said in Western Casualty & Guaranty Co. v. Board of Commissioners, 60 Okl. 140, 159 P. 655, 659, L.R.A.1917B, 977: "* * * Here the statute fixes the conditions of the depository bond. Section 1540, supra. This law, with all its terms, no more and no less, becomes a part of the bonding contract. * * *"

In the case of Southern Surety Company et al. v. Kinney, 74 Ind.App. 205, 127 N.E. 575, 580, the court pointed out that the provisions of the statute governing official bonds, even though not written into the bonds, by virtue of the statute, are a part of it, "and enter into a determination of the rights and liabilities of the obligors thereon." Speaking further upon this point, that court said that when appellants executed such bond they "were bound to know the conditions imposed by the statute, and were powerless to change the obligations thereby assumed, by inserting therein any restrictive provisions."

"The court will read into the bond the statutory conditions" where it is clearly a statutory bond. Southwestern Surety Co. v. Davis, 53 Okl. 332, 156 P. 213, 216.

"The liability of the surety is measured by the provisions of the statute rather than the language of the obligation itself." Trustees of the Village of Bath v. McBride, 81 Misc. 618, 142 N.Y.S. 1014, 1017. See also Higdon v. Fields, 6 Ala.App. 281, 60 So. 594; Henry County v. Salmon, 201 Mo. 136, 100 S.W. 20.

It would appear that even though the stipulation of limitation were written into the bond itself, the rule would be the same. Absent an agreement to such limitation or acquiescence therein on the part of the other surety, it might be said that such would be the result; but, we need not and do not express an opinion upon that broader question. We confine ourselves to the facts of the case before us. We have a bond statutory in form and with the limitation relied upon not written therein.

Counsel for appellant, in an earnestly presented argument and able brief, urges upon us a careful consideration of what disposition of this case will better serve the ends of justice, aside from the persuasive force any hard and fast rule to which we might feel committed by the weight and force of authority might have. The county did not, and, as a matter of fact, it could not, suffer by reason of this agreement, it is pointed out. The county was kept "safe and harmless", by the appellee's bond, he says, and this additional bond of appellant, to protect the funds in excess of the amount for which appellee company stood surety, was likewise fulfilling a purpose of keeping "safe and harmless", to the extent it undertook to do so.

It is true, as appellant points out, appellee company took on no additional burden with the giving of the second bond. It is likewise true that it could not have insisted that this or another bond of like character should be given; yet, since one was given, the well established law of contribution in case of loss, as between co-sureties, was thereby put in motion. The fact that the profit therefrom which now comes to appellee may be somewhat gratuitous, that it was not expected that other sureties would thereafter enter the picture to help bear the risk and burden of loss, can make no difference. When another surety did enter, it entered as a contracting party under the same circumstances which presented themselves to appellee—appellant became surety upon a statutory bond and was "bound to know the con-

ditions imposed by the statute." Southern Surety Co. et al. v. Kinney, supra, and he was bound to know that the parties cannot by contract or otherwise "limit" the statutory obligation. Lawrence v. American Surety Co., supra.

The point is made that appellee company having been fully compensated for carrying the risk to the full amount of $10,000 it should be required to take the full loss, an amount substantially less than that. The courts uniformly uphold the rule which we are applying here without suggestion that it is inequitable, and without the least tone of apology. See United States Fidelity & Guaranty Co. v. Naylor, 8 Cir., 237 F. 314; United States Fidelity & Guaranty Co. v. McGinnis, 147 Ky. 781, 145 S.W. 1112; Fidelity & Deposit Co. etc. v. Phillips et al., 235 Pa. 469, 84 A. 432.

A wholesome public policy lies behind the strict statutory language with which these bonds securing public moneys are clothed. Appellant is fortunate that the loss in the bank was not greater, otherwise the full principal of both the bond of appellee and his own might have been consumed. Appellee company is likewise fortunate that, though without its knowledge, others came forward to help assume a risk that otherwise would have been borne entirely by it. We mention this for what slight comfort it may afford appellant to reflect thus that it could have been worse; and, also, to impress upon him the sound conviction which we entertain, that such a rule, though harsh it may appear in some isolated cases, has for its support a sound

public policy, and therefore much logic and reason.

Finding no error the judgment is affirmed, and, it is so ordered.

BRICE, ZINN, SADLER, and MABRY, JJ., concur.