**FARMERS ELEVATOR MUTUAL IN-SURANCE COMPANY, Plaintiff,**

v.

**JORSKI MILL AND ELEVATOR CO.,** Inc., and Millers Mutual Insurance Association of Illinois, Defendants.

Civ. No. 65–108.

United States District Court
W. D. Oklahoma.

Sept. 22, 1966.

Barefoot, Moler, Bohanon & Barth, Oklahoma City, Okl., Major Ginsberg, Dallas, Tex., for plaintiff.

Hanson, Fisher, Tumilty, Peterson, Melton & Tompkins, Oklahoma City, Okl., Garrett & Pool, Del City, Okl., for defendants.

## ORDER

DAUGHERTY, District Judge.

Plaintiff Farmers Elevator Mutual Insurance Company, hereafter called Farmers, insured the Commodity Credit Corporation, an agency of the United States Government, hereafter called CCC, for all amounts which the CCC should be entitled to recover from a warehouseman because of the failure of the warehouseman to perform fully his obligations under a uniform grain storage agreement.

The defendant Jorski Mill and Elevator Co., Inc., hereafter called Jorski, was a warehouseman and had entered into a uniform grain storage agreement with the CCC. Pursuant to the terms of this agreement the defendant Millers Mutual Insurance Association of Illinois, hereafter called Millers, issued a warehouseman's bond on Jorski in favor of the CCC. Jorski paid the premiums for the warehouseman's bond issued by Millers and pursuant to the provisions of an amendment to the uniform grain storage agreement between Jorski and the CCC, Jorski agreed to and paid the premiums for the insurance policy issued by Farmers to CCC and also agreed that Farmers might be subrogated to the rights of CCC to recover against a warehouseman and any other person to the extent of any payments made by Farmers to CCC and that Jorski waived any defense it might have as a result of paying the premiums on the insurance policy issued by Farmers to CCC in case Farmers brought suit under its right of subrogation.[1]

On April 9, 1964, Jorski failed to load out approximately 19,000 bushels of wheat on order of the CCC. This wheat had an undisputed value of $42,511.40. Farmers paid this amount to CCC and has instituted this suit to recover this payment from the defendants Jorski and Millers, the warehouse bondsman of Jorski. CCC also claimed that the failure of Jorski to load out the CCC wheat did not result from normal and prudent warehousing practices. In such case, by the terms of the Uniform Grain Storage Agreement, the CCC is entitled to recover from the warehouseman all storage charges paid by CCC to the warehouseman on the wheat not loaded out. CCC also presented this claim to Farmers under its insurance policy and Farmers paid to CCC the additional amount of $7,323.-85 representing the storage charges paid by CCC to Jorski on the said approximately 19,000 bushels of wheat not loaded out by Jorski. The plaintiff Farmers also seeks recovery herein under right of subrogation against the defendants Jorski and Millers for this amount paid by Farmers to CCC.

Shortly prior to the jury trial herein, the defendants Jorski and Millers raised new defenses to the effect that the plaintiff Farmers was not legally entitled to the right of subrogation; that Farmers policy of insurance and the bond of Millers were co-insurance with the two companies being co-sureties for Jorski in favor of CCC, and since all premiums were paid by Jorski the result follows that any loss caused by Jorski to CCC should be pro-rated between Farmers and Millers with the right of contribution existing between Farmers and Millers. The defendants Jorski and Millers also urged prior to the jury trial that Farmers was not entitled to recover interest against the defendants except from the date of any judgment which might be entered herein.

It was agreed by all at the start of the trial that the said questions raised by the

---

1. This provision in the amendment to the Uniform Grain Storage Agreement between Jorski and the CCC, reads as follows:

"* * * nor shall any such insurance policy or bond inure to the benefit of the warehouseman. If the insurance company or surety company providing blanket coverage to CCC pays any amounts to CCC for which the warehouseman is liable, such company shall, to the extent permitted by law, be subrogated to CCC's rights of recovery against the warehouseman and any other person to the extent of such payment. If any claim is instituted by such company under its right of subrogation, the warehouseman waives any defense he may have as a result of paying the charge as required by Section 18(d)".

defendants regarding subrogation, contribution and interest were law questions and not jury questions and that the jury trial may proceed with the Court reserving decision on these three law questions and any judgment entered to be subject to change or correction as necessary as the three questions were resolved by the Court after the jury trial.

The jury trial then proceeded with the result that the Court found the defendants to have failed to produce any defense for the failure of Jorski to load about the approximately 19,000 bushels of CCC wheat and directed the jury to return a verdict in this regard in favor of the plaintiff and against the defendant in the amount of $42,511.40. This directed verdict, and judgment based thereon was, of course, subject to the aforementioned reservation regarding the three law questions. Regarding the recovery sought herein by Farmers for the storage charges paid by CCC on wheat not loaded out by Jorski, the Court submitted this matter to the jury on an Interrogatory which reads as follows:

> "Was the determination by the CCC through its Shortage Review Committee that the grain shortage of the defendant, Jorski Mill & Elevator Company, in the approximate amount of 19,000 bushels of wheat, was not the result of normal and prudent warehousing practices on the part of the Jorski Mill & Elevator Company made in an arbitrary or capricious manner?"

The answer of the jury to this Interrogatory was "Yes." To this answer which formed the verdict of the jury on this point, with judgment entered thereon by the Court, the plaintiff Farmers has filed a Motion for Judgment Notwithstanding the Verdict on the basis that the Court should not have submitted this issue to the jury but should have entered judgment thereon in favor of the plaintiff Farmers as a matter of law and in the alternative that the answer of the jury to the interrogatory is not supported by the evidence and cannot be permitted to stand.

Therefore, in view of the foregoing, the Court has for determination at this time four questions, namely, (1) plaintiff's right to subrogation, (2) the contribution or co-insurance question between Farmers and Millers, (3) plaintiff's Motion for Judgment Notwithstanding the Verdict on the storage charge recovery issue, and (4) the interest question on any judgments which might be finally entered. All of these questions have been fully briefed by the parties.

## THE SUBROGATION QUESTION

The defendants urge that the plaintiff is not entitled to be subrogated to the rights of CCC and sue herein for two reasons. The first is that the agreement between CCC and the defendant Jorski in the amendment to the Uniform Grain Storage Agreement and set out in Footnote 1, supra, is void and unlawful by reason of two Oklahoma Statutes.[2] The second reason is that the defendant Jorski is a coinsured with the CCC on the Farmers policy or the policy of insurance was issued for its benefit by Farmers and therefore the insurer Farmers cannot recover against Jorski. Several cases are cited by the defendants to the effect that an insurer cannot upon paying a loss proceed to recover from its insured, a coinsured or one for whose benefit the insurance was issued. These two contentions of the defendants are found to be without merit.

2. These two statutes read as follows:
(15 O.S.A. § 216)
"Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void."

(15 O.S.A. § 211)
"Those contracts are unlawful which are:
1. Contrary to an express provision of law.
2. Contrary to the policy of express law, though not expressly prohibited; or,
3. Otherwise contrary to good morals.

■ The Court finds neither of the two Oklahoma Statutes cited above to be offended by the amendment agreement of the CCC and Jorski which is set out in Footnote 1, supra. This agreement involves substantive rights. 15 Oklahoma Statutes, Section 216, pertains to remedies or procedure. Moreover, the provisions of this amendment, being an agreement between the United States of America and Jorski, would not be subject to state statutes but would be governed by federal law. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

■■ No provision of law is shown which the said amendment agreement as set out in Footnote 1, supra, may be said to violate. The insurance policy issued by Farmers to CCC was designed to fill certain voids present in the risks to CCC under the Uniform Grain Storage Agreement and the warehouseman's bond. This insurance policy gave additional protection to CCC against losses which might occur in excess of the coverage afforded by the warehouseman's bond; against insolvency on the part of a warehouseman and/or his bondsman making collection impossible, and against the trouble, expense and hazards of litigation against the warehouseman and his bondsman. In obtaining this protection, even with the premiums therefor being paid by the warehouseman by agreement, it is not found that any law is violated by specifically assuring subrogation rights to the insurer against the warehouseman and his bondsman and by specifically providing that the insurance was not for the benefit of the warehouseman. These important conditions had a significant bearing on the type of risks insured against and the amount of the premium charged for the policy. The fact that Jorski paid the insurance premium on the insurance policy issued by Farmers to CCC would not control. Jorski was not forced to execute either the Uniform Grain Storage Agreement or the bond amendment thereto. Jorski was not forced to agree to pay the premiums on the insurance policy issued by Farmers to CCC or Jorski's part of the premium but Jorski could have refused to agree to this amendment agreement and all of its terms, provisions and obligations. Jorski also paid the premiums on the warehouseman's bond issued by Millers, but Millers, if required to pay a loss, has the right to look to Jorski for reimbursement. The cases relied upon by the defendants are clearly not in point. They are all cases in which the person the insurance company was attempting to recover from under subrogation was either the insured, one found to be a co-insured or one for whose benefit the insurance was obtained. In this case Jorski is not the insured, only CCC is the named insured, Jorski is not a co-insured and Jorski specifically agreed in writing that the insurance was not issued for his benefit and further agreed that it could be proceeded against in subrogation and specifically waived any defense it would have to a subrogation action because it paid the insurance premiums. Therefore, the Oklahoma Statutes cited above not being violated and also not being applicable to a government contract and the defendant Jorski specifically agreeing to subrogation, the defense raised by the defendants that the plaintiff is not entitled to subrogation is without merit and as a matter of law it is found not applicable herein.

THE CONTRIBUTION QUESTION

The defendants urge that the policy of insurance issued by Farmers to CCC was additional or concurrent insurance to the warehouseman's bond issued by Millers to Jorski with the result that Farmers and Millers are co-sureties. Then under the doctrine of contribution any loss of Jorski to CCC must be pro-rated between Farmers and Millers on the basis of the total coverage undertaken by each. Farmers policy of insurance to CCC afforded coverage in the amount of $947,-200.00 as to Jorski, whereas the warehouseman's bond of Millers for Jorski is in the amount of $105,000.00. By calculation Millers should then only be responsible for $4,242.25 of the $42,511.40 loss on the approximately 19,000 bushels of wheat which Jorski failed to load out

to CCC. The same proration, it is urged, would apply to any other losses by Jorski.

■ The defendants rely upon the rule that if several promisors are bound for a common burden, even though by separate instruments, they will be liable to contribute to each other; that if their undertakings are for different amounts, their liability and contribution will be in proportion; that becoming sureties at different times and without knowledge of each does not affect their liability to contribute one to the other as co-sureties. Stearns on Suretyship, Third Edition, Page 477, Section 263.

The plaintiff asserts that it contracted for and obtained the right of subrogation against Jorski and Millers; that it contracted with the CCC only to be a supplemental surety or a sub-surety, responsible to answer for the default of Jorski and another already bound in suretyship. Further, that there is no contribution between a surety and a sub-surety.

Paragraph 8 [3] of the policy of insurance issued by Farmers to CCC provided that Farmers would pay the entire loss if CCC could not collect without suit. Then Paragraph 10 [4] of the insurance policy gave Farmers the right of subrogation to recover therefor against Jorski and any other person or other legal entity. This clearly includes Millers.

Stearns, Law of Suretyship, Section 11.20, Fifth Edition, Page 486, states:

"Liability in Contribution of a Surety for a Surety.

"As has been indicated, there is a presumption that, when two or more persons are sureties on the same instrument, they are co-sureties. This presumption is subject to rebuttal and, in the absence of all stipulation on the instrument itself, the conditions under which the various parties sign may be shown by parol. If a mutual understanding between the surety and either the debtor or creditor be established that the liability of co-surety is not assumed, contribution will not be enforced, even though the earlier surety had no notice of the arrangement.

The second surety may contract only as a supplemental surety, or one who engages to answer for the default of another who has already become bound as a promisor in suretyship. A supplemental surety is not liable in contribution, since as to such promisor the earlier surety is in the relation of a principal debtor. This is illustrated by the ordinary cases in which two or more persons become separate and successive indorsers upon promissory notes. If they are regular indorsers in the chain of title, the last undertakes that the first shall pay and, if the first does pay, the later indorsers are fully exonerated. This is because they are sureties for the earlier indorsers and

3. This paragraph reads as follows:
   "8. *Settlement of Claims.* All claims shall be paid or made good to CCC within 60 days after presentation and acceptance at the office of the insurer of satisfactory proof of claim. Prior to filing a claim against the insurer CCC shall make reasonable efforts, by offset or otherwise short of litigation, to collect amounts due from warehouseman except in cases where CCC believes such collection efforts would be of no avail. CCC shall endeavor to complete such collection efforts within 120 days after the amount of the claim has been determined, except where CCC determines after consultation with the Department of Justice that such collection efforts should be de-

ferred so as not to prejudice possible criminal or civil frauds action. Nothing herein shall be construed as imposing an obligation on CCC to continue to store grain or otherwise to do business with any warehouseman as a means of providing income for offset against any claim. No amount shall be paid hereunder if CCC has collected the same from others."

4. "*Subrogation.* In the event of any payment under this policy the insurer shall, to the full extent permitted by law, be subrogated to all of CCC's rights of recovery therefor against the warehouseman and any other person or other legal entity to the extent of such payment."

not with them. The same is true of successive accommodation indorsers in the absence of a special agreement to be bound jointly.

If one of several sureties stipulates with the debtor or creditor to assume liability only as a surety for those who precede him, he will be bound in no other way. It adds nothing to the liability of the earlier signers that another has undertaken to answer for them, and the equity of contribution is overcome by the superior legal contract right of the later promisor who signs upon such condition."

Under the evidence of this case the Court finds and concludes with no difficulty that Farmers was and is a subsurety to Millers and not a co-surety and is not liable in contribution as urged by Millers and Jorski. Therefore, the claim of contribution between co-insurors or cosureties raised by the defendants is without merit and as a matter of law is found not applicable herein.

## MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

By its Motion for Judgment Notwithstanding the Verdict as to the storage charge claim, the plaintiff asserts that the Court should not have sent to the jury the question of whether or not the determination by the Shortage Review Committee of the CCC that the said approximately 19,000 bushel wheat shortage of Jorski did not result from normal and prudent warehousing practices was made or reached by the committee in an arbitrary or capricious manner. The authority for CCC to make this determination is contained in Section 17(d) for the Uniform Grain Storage Agreement entered into between the CCC and Jorski.[5] In this connection CCC uses a Shortage Review Committee. The result of this determination that the shortage was not due to normal and prudent warehousing practices was the claim by CCC against the defendants for recovery of the storage charges paid by CCC to Jorski on the undelivered wheat. This claim not being paid by the defendants, the plaintiff paid the same to the CCC under its insurance policy and now seeks recovery of this payment herein under the right of subrogation.

The plaintiff states in said Motion that the Court should have decided this question without the jury for two reasons, namely, first, that it is not a jury question, and, second, under the evidence there could have been but one reasonable answer to the Interrogatory and that in favor of the plaintiff and a verdict then should have been directed in favor of the plaintiff regarding this claim.

From a consideration of the briefs of both sides, the Court finds and concludes that both positions of the plaintiff are correct.

Prior to September, 1963, Jorski had a shortage of wheat on several occasions but had been allowed to make up the shortage. In September, 1963, before the last load-out order by CCC in April, 1964, an examination and report revealed that Jorski had all the wheat in his elevator that he should have had. This was a total of 335,000 bushels. Approximately six months later upon the last load-out order by the CCC Jorski was short approximately 19,000 bushels. The Committee determined under its authority in the Uniform Grain Storage Agreement that this size of shortage in this short period of time was from causes other than normal and prudent warehousing practices on the part of Jorski. The defendants have asserted reasons herein for this shortage in said period of time because of shrinkage and theft. As to

5. This Section reads as follows:

"In the event of any disposition of the grain contrary to the terms of this agreement, no charges shall accrue for any period of time such grain is not in store and no charges of any kind shall be payable on any quantity of the grain not loaded out: Provided, however, That charges shall be payable with respect to such grain if it is determined by CCC that such disposition resulted from normal and prudent warehousing practices, or was authorized by law, by CCC, or by the lawful holder of the warehouse receipts(s)."

shrinkage, the expert testimony revealed that this could not have caused a loss in excess of 1665 bushels. As to theft defendants offered nothing but speculation or a possibility of theft and presented no evidence of any substance that a theft in fact had occurred.

In support of its first position that this was not a jury question, the plaintiff cites from the case of Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947), as follows:

"The concept of a jury passing independently on an issue previously determined by an administrative body or reviewing the action of an administrative body is contrary to settled federal administrative practice; the constitutional right to jury trial does not include the right to have a jury pass on the validity of an administrative order. * * * [P]etitioners have full protection by having the issue submitted to the trial judge and the reviewing courts to determine whether there was any substantial basis for the classification order. When the judge determines that there was a basis in fact to support classification, the issue need not and should not be submitted to the jury. Perhaps a court or jury would reach a different result from the evidence but as the determination of classification is for selective service, its order is reviewable 'only if there is no basis in fact for the classification.'" 332 U.S. at 453, 68 S.Ct. at 120.

■■■■ Under this case the Court should have first determined if there was a basis in fact to support the determination of the Committee and if so the issue need not and should not be submitted to the jury. The defendants in their brief do not question the procedure set out in Cox, supra, but raise the question of the lack of notice to them and no opportunity afforded them to be present at the determination and present evidence. In any event, the shortage and its cause or causes was before this Court. The determination of the Shortage Review Committee had a most substantial basis in fact in the opinion of the Court.

■■■■ Moreover, under the rule in Brady v. Southern Railway Company, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239, (1943),[6] the Court should have directed a verdict on this claim and now should enter judgment notwithstanding the verdict thereon. The evidence was such that there was but one reasonable conclusion to have been reached in answering the Interrogatory submitted and that was that the Shortage Review Committee did not act in an arbitrary and capricious manner in determining that the approximately 19,000 bushel shortage of wheat in six months was from reasons other than normal and prudent warehousing practices on the part of Jorski.

Accordingly, the Motion of plaintiff for Judgment Notwithstanding the Verdict is granted and the judgment entered herein on the answer of the jury to the Interrogatory submitted and its verdict based thereon should be set aside and vacated and otherwise corrected and changed to provide for judgment on the storage charge claim in favor of the plaintiff and against both defendants in the sum of $7,323.85.

## THE INTEREST QUESTION

The plaintiff asserts that it is entitled to interest on both its claims from April 9, 1964, the date of the last load-out order issued by CCC to Jorski and which was not fulfilled by Jorski, whereas, the defendants claim that interest is not allowable except from the date judgment is entered since plaintiff's claims are both unliquidated. The judgment entered on July 13, 1966, on the directed verdict in the amount of $42,511.40 contained the provision that interest on said amount is due the plaintiff at 6% from April 9,

6. This case provides:
"When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by nonsuit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by a judgment notwithstanding the verdict."

1964. The Court reserved the interest question at the jury trial. A Motion to Reconsider the Judgment above mentioned as to the interest provision therein has been presented to the Court by defendant Jorski with supporting brief. The Court under the reservation regarding the interest question will now determine the same as it pertains to both of plaintiff's claims.

Even though the plaintiff, a private insurance company, sues herein on the basis of being subrogated to the position of the CCC, an agency of the United States government, it is likely that state law rather than federal law should apply. However, if federal law should be applied, the rule as to interest under the case of Royalty Indemnity Company v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L. Ed. 1361, (1941), is that the right to interest should be determined by the federal court according to its own criteria. In this case the criteria adopted by the Court will be the same as provided by the law of the State of Oklahoma.

Two Oklahoma Statutes apply to this question as follows:

(23 Oklahoma Statutes, § 6.)

"Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

(23 Oklahoma Statutes, § 22)

"The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

We are thus confronted with the proposition of whether the claims of the plaintiff are liquidated or non-liquidated. The Court finds both claims to be liquidated in that on April 9, 1964, the quantity of wheat not delivered by Jorski to CCC was definite and certain, its value was also certain by calculation and the storage charges paid by CCC to Jorski on this definite quantity of undelivered wheat was likewise certain and capable by calculation of being ascertained. The right to recover the value of the wheat and the storage charges paid on the same vested on April 9, 1964. The obligation of Millers to CCC on the warehouseman's bond issued for Jorski likewise vested on that date and the amount of the obligation payable by Millers was likewise liquidated, definite and certain on that date. It was not necessary for the Court herein to ascertain the amounts due on the claims of the plaintiff.

The plaintiff is therefore entitled to interest on both claims at 6% from April 9, 1964.

In view of the foregoing, the verdict directed by the Court and the judgment based thereon on the claim of the plaintiff against both defendants in the amount of $42,511.40 for the value of the undelivered wheat is affirmed with interest at 6% from April 9, 1964, and the three questions pertaining thereto reserved by the Court at the jury trial are each resolved against the defendants and in favor of the plaintiff for reasons aforesaid. The plaintiff's Motion for Judgment Notwithstanding the Verdict on the claim of plaintiff for the storage charges paid on the undelivered wheat is granted for the reasons set out above and the Court finds and concludes that the plaintiff is entitled to judgment therefor against both defendants for the amount of $7,323.85 with interest thereon at 6% from April 9, 1964. The defendant Millers Mutual Insurance Association of Illinois is entitled to judgment over and against the defendant Jorski Mill & Elevator Company for the total sum of $49,835.25 with interest thereon at the rate of 6% from the 9th day of April, 1964, and its costs of action.

Counsel for plaintiff will prepare an appropriate corrected judgment conforming to the foregoing and submit the same to the Court for signature. Rule 58, Federal Rules of Civil Procedure, 28 U.S. C.A.