**UNITED STATES of America,**
**Plaintiff,**

v.

**HORVATH BROTHERS, INC., a corporation, the Home Indemnity Company, a corporation, and the Travelers Indemnity Company, a corporation, Defendants.**

No. 65–C–10.

United States District Court
E. D. Wisconsin.

Dec. 6, 1967.

**160**

Kenneth M. Kenney, Milwaukee, Wis., for defendant The Travelers Indemnity Co.

Francis J. Korf, East Troy, Wis., for defendant The Home Indemnity Co.

## OPINION AND ORDER

GRUBB, Senior District Judge.

The case is before the court on a stipulation of fact, briefs and argument of counsel on cross motions for summary judgment by defendants The Home Indemnity Company, hereinafter called "Home," and The Travelers Indemnity Company, hereinafter referred to as "Travelers."

The action was commenced by the United States, as the real party in interest, on a claim by the Commodity Credit Corporation for damages sustained as a result of load out shortages under Grain Storage Agreement No. A–36–3–CCC–77, entered into on June 30, 1960, between Commodity Credit Corporation and Horvath Brothers, Inc., hereinafter called "Horvath," a corporation engaged in the public storage warehouse business licensed under Wisconsin law. The agreement of June 30, 1960, superseded an earlier contract having substantially similar provisions.

On or after its default Horvath became insolvent. On payment of the amount due the Commodity Credit Corporation by Home in full discharge of the loss, the cause of the United States was dismissed on the merits with the court retaining jurisdiction to determine the issue of contribution between the defendant sureties.

On July 2, 1960, Horvath as principal and Travelers as surety, issued their "Continuous" Surety Bond for Public Storage Warehousemen in the penal sum of $10,000, binding themselves to the State of Wisconsin, but for the benefit of all persons interested, for the principal's faithful performance of its duties as a warehouseman and for the observation of all laws and lawful regulations relating to the carrying on of the business of a public storage warehouse. Travelers' bond is the statutory bond required under Section 100.13(4), Wis.Stats., as a condition for state licensing as a warehouseman.

On April 4, 1960, Horvath as principal and Home as corporate surety issued their warehouseman's bond No. 327609 for storage agreement No. A–36–3–CCC–77 in the penal sum of $46,000, which amount was increased by rider dated September 6, 1961, to the value of $58,000. Another rider, dated June 23, 1960, made the bond applicable to the subsequent agreement also numbered No. A–36–3–CCC–77, dated June 30, 1960. Under said bond Horvath and the surety Home bound themselves to the CCC for the faithful performance of all the undertakings and conditions of the Grain Storage Agreement.

The parties agree that the payment of $19,500 by Home in settlement of the claim of the Commodity Credit Corporation was reasonable and that there was no provable wrongdoing on the part of Horvath in respect to the load out shortages.

Resolution of the issue of the right of contribution or indemnification between the respective sureties turns on the determination of the relation between them under the facts of the case. According to the Restatement, Security, Sec-

tion 146,[1] where there are two or more sureties for the same duty of a principal, the sureties may determine their relationship by agreement. In the absence of agreement of either to the contrary or of equities imposing the principal liability on one of them, the sureties are deemed cosureties. See also, Hartford Accident & Indemnity Company v. Worden-Allen Company, 238 Wis. 124, 132–133, 297 N. W. 436 (1941).

Home contends that its intention to be a subsurety to the extent of other insurance is evidenced by the language of § 15 of the Grain Storage Agreement which is incorporated into Home's bond. This provides as follows:

" * * * In the event the warehouseman insures against hazards to the grain not specified herein, such insurance shall inure to the holders of the warehouse receipts or other documents evidencing ownership of or beneficial interest in such grain. * * * "

██ Under § 15 the warehouseman is obligated to insure all grain in his own name for the full market value against specified hazards such as fire, lightning or wind damage for the benefit of record holders of warehouse receipts. Since there has been no showing that the default of Horvath was occasioned by a hazard to which this provision of the agreement has reference, or that Travelers' bond was secured to cover such a hazard, this provision of the Grain Storage Agreement may not be deemed to show an intention that Travelers indemnify Home in respect to the load out shortages in this case.

There being no agreement expressing the relation between the sureties, it remains to determine whether or not the equities impose principal liability on one of them. Comment on Clause (b) of Section 146, Restatement, Security, provides as follows:

"The equities of the sureties are not equal and their relation is subsuretyship rather than cosuretyship where one surety has undertaken a general obligation against defaults of the principal while the other surety has undertaken an obligation in respect of specific defaults, and the specific default occurs. * * * In such a case, the surety against the specific default is the principal surety and the general surety the subsurety. * * * "

This rule was applied in Hartford Accident & Indemnity Co. v. Anderson, 192 Minn. 200, 256 N.W. 185 (1934).[2] The principal was an administrator. Surety-1 issued a general bond as to the administrator's duties including that of the sale of real estate and accounting of proceeds. Surety-2 was the surety on the sales bond for the particular transaction. On the principal's default, Surety-2 paid on the sales bond. The court held that as to the creditors, the sureties were cosureties; but as between them, Surety-2 was primarily liable on the special and limited liability which it underwrote on the sales bond and the general bondsman was secondarily liable. The court noted that when Surety-2 paid its liability under the sales bond, it was answering only for its share of the default and its equity was inferior to that of the general bondsman. Without equality of equity, there could

---

1. "§ 146. DETERMINATION OF THE RELATION BETWEEN SURETIES.
   "Where there are two or more sureties for the same duty of the principal, the following rules are applicable to the determination of the relation between themselves:
   "(a) The sureties may conclusively determine their relation by agreement.
   "(b) The sureties are cosureties in the absence of agreement or stipulation of either to the contrary or of duties or equities imposing the principal liability on one of them.

"(c) A surety is a subsurety if he has so stipulated and is not under a duty to assume a greater liability, except to the extent that his stipulation will inequitably increase the obligation of another surety."

2. The holding is explained in County of Dodge v. Martin, 271 Minn. 489, 136 N.W.2d 652, 656 (1965). And see, Iowa National Mutual Insurance Company v. Universal Underwriters Insurance Company (Minn.), 150 N.W.2d 233, 237 (1967).

be no contribution from the surety having secondary liability, in this case the general bondsman.

Cases cited by Home may be distinguished.[3] In Farmers Elevator Mutual Insurance Company v. Jorski Mill and Elevator Co., 259 F.Supp. 755 (W.D. Okl.1966), the parties determined their relationship by agreement since there was an express right of subrogation. In Fidelity & Deposit Co. of Maryland v. Richard, 44 N.M. 424, 103 P.2d 628 (1940), it was held that liability under a statutory bond could not be altered by oral agreement, leaving the parties as cosureties with a right of contribution. A rule contrary to that of the Restatement or that followed in Hartford Accident & Indemnity Co. v. Anderson, supra, was stated as dictum, without citation of authority in American National Fire Insurance Company v. Gibbs, 260 N.C. 681, 133 S.E.2d 669 (1963). No contribution was awarded because plaintiff failed to try the case on the theory of cosuretyship.

 In the instant case, Travelers is the general surety under the statutory bond it furnished while Home is the surety on the specific obligation to the Commodity Credit Corporation under the Grain Storage Agreement. The obligations of these sureties, although not coextensive in all respects, overlap as to the default of Horvath in respect to the load out shortages.[4] The court finds that there is no agreement or stipulation as to the relationship of the sureties as between them. Applying the rule of the Restatement, the court concludes that Travelers is a subsurety and that Home is the principal surety as to the default of Horvath and as such Home is not entitled to contribution or indemnification from the subsurety.

Accordingly,

The motion for summary judgment of the Home Indemnity Company must be and it is hereby denied, and the motion for summary judgment of the Travelers Indemnity Company must be and it is hereby granted.

There remaining no material issue of disputed fact, Travelers is entitled to judgment as a matter of law. The clerk is hereby directed to enter judgment for the Travelers Indemnity Company, denying the claim of Home Indemnity Company for contribution or indemnification, and for its costs.

---

3. And compare, Employers Mutual Casualty Co. v. MFA Mutual Ins. Co., (10th Cir. decided Oct. 12, 1967) 384 F.2d 111, where the court prorated the loss between a primary and secondary insurer because conflicting "no liability" and "excess" clauses were to be disregarded as mutually repugnant.

4. In view of the court's decision herein, it is not necessary to determine whether or not Travelers' bond extended only to a loss occasioned by negligence while Home's bond applied in a case where there was no provable wrongdoing on the part of Horvath as is claimed by Travelers to show differing obligations of the sureties.